| 97 | 65 |
| 127 | 165 |

JAMES W. HOWD, ADMINISTRATOR, ETC., v. JUSTIN A. BRECKENRIDGE ET AL.

*Fraudulent conveyances—Action by administrator—Evidence— Lost order.*

1. Where the defendant in a bill filed by an administrator to recover property conveyed by the decedent in fraud of creditors is fully protected, it can make no difference to him that the administrator purchased the claims which were proved against the estate before his appointment as administrator.

2. It is true, as a general proposition, that a distinct right of action for fraud is not assignable; but where the right to enforce a claim which is in itself assignable depends upon showing fraud incidentally, the rule has no application; citing *Sweet v. Converse,* 88 Mich. 1.

3. Where it may be fairly inferred from the proofs that an order of the probate court allowing a claim against the estate of a

97 MICH.—5.

deceased person has been lost, parol proof of its contents is admissible; citing *Drake v. Kinsell,* 38 Mich. 232.

Appeal from Gratiot.   (Daboll, J.)   Argued April 20 and 21, 1893.   Decided October 2, 1893.

Bill to reach property alleged to have been conveyed by decedent in fraud of creditors.   Defendant Breckenridge appeals.   Decree affirmed.   The facts are stated in the opinion.

*John T. Mathews* and *George P. Stone,* for complainant.

*E. McCall (Hanchett, Stark & Hanchett,* of counsel), for appellant.

MONTGOMERY, J.   The complainant, who is administrator of the estate of John W. Howd, filed this bill under the provisions of section 5884, How. Stat., which provides that when there shall be a deficiency of assets, and when the deceased shall, in his life-time, have conveyed any real estate, or any interest therein, with intent to defraud his creditors, or to avoid any right, debt, or duty of any person, or shall have so conveyed such estate that in law the deeds or conveyances are void as to creditors, the executor or administrator may, and it shall be his duty to, commence and prosecute to final judgment any proper action or suit, at law or in equity, for the recovery of the same, etc.

The deceased, John W. Howd, was in business at Ithaca. He owned a stock of goods, and had a quantity of notes, bills receivable, etc., the exact value of which does not appear.   He owned real estate, which, including a homestead, valued at from $1,200 to $1,500, was worth from $10,000 to $11,000.   The real estate was incumbered by several mortgages,—one to one Dutton, for $840; one

known as the "Jeffery Mortgage," of $950; one to one Perrin, of $290; and one to Edson, Moore & Co., of $3,000,—making a total real-estate incumbrance of $5,080. He was also indebted to creditors who were unsecured to the amount of nearly $7,000. About this time he gave to the defendant Justin A. Breckenridge a chattel mortgage to indemnify him against loss on account of entering a stay of execution on certain judgments which had been recovered against him (Howd). These judgments appear to have been paid subsequently by Howd; but, instead of discharging the mortgage, a deed of 80 acres of land was afterwards given to Breckenridge as additional security for the same purpose. In November, 1879, Howd sold his stock of goods in Ithaca, and took as part payment therefor a satisfaction of the Jeffery mortgage, and, instead of having the mortgage discharged, caused the same to be transferred to Breckenridge without any consideration. During this time several suits were pending against Howd, but, before judgments were obtained upon the claims, he succeeded in negotiating a sale of the farm which had been conveyed to Breckenridge, and, with the money resulting from the sale, paid in full the Dutton mortgage, and applied the balance, $1,350, on the mortgage to Edson, Moore & Co.; but at the same date he gave to Breckenridge a mortgage covering his entire real estate, except his homestead, for $1,800. Breckenridge then held an assignment of the Jeffery mortgage, and a mortgage for the sum of $1,800 to himself, the latter without consideration, the former having been paid by Howd himself, and which were apparently valid liens. Two levies had in the mean time been placed upon the lands by creditors. Howd proceeded to negotiate a purchase of the Edson, Moore & Co. mortgage, he supplying the funds necessary for that purpose, except $1,000, which sum was advanced by defendant Breckenridge, and

an assignment taken in his name. Howd then proceeded
to employ counsel to foreclose the Edson, Moore & Co.
mortgage, and caused the property to be bid in in
the name of defendant Breckenridge, for the sum of
$832 in excess of the amount due on the Edson, Moore &
Co. mortgage.    Breckenridge, being the ostensible pur-
chaser, should have paid the surplus, but it appears by the
record that he did not do so.    The surplus, upon the face
of the record, belonged to Charles H. Howd, a son of
John W. Howd; and it appears that John W. Howd
secured the note of Charles H. Howd, indorsed by Breck-
enridge, upon which a certificate of deposit was obtained,
and he went through the form of paying this into the
hands of the clerk, and subsequently withdrawing it from
the clerk upon a receipt given by Charles H. Howd.    With
the title thus ostensibly in Breckenridge, John W. Howd pro-
ceeded to negotiate sales of portions of this land sufficient
to satisfy the $1,000 advanced by Breckenridge, and also
left in the hands of Breckenridge mortgages and securi-
ties amounting in the aggregate to $2,867.

We are fully satisfied from the record that the entire
proceeding to place in the name of Breckenridge, and to
foreclose, the Edson, Moore & Co. mortgage, was had with
a view to defeating the creditors of John W. Howd,
and to save the estate to him.    The circuit judge, who
heard the testimony and saw the witnesses, reached this
conclusion, and we think the evidence fully justified it.

It is argued, however, that the complainant's claim is
inequitable, for the reason that the administrator pur-
chased the claims of the various creditors which were
proved before becoming administrator, and that this is in
the nature of a fraud upon the creditors; and it is said
that the administrator cannot derive profit from the man-
ner in which he performs his duty.    This proceeding is not
one in which the assignors of the judgments and claims are

complaining. If the defendant is fully protected, it can make no difference to him that the claims against the estate were proved by James W. Howd, instead of by the original owners. Nor do we think there has been any such laches as should bar the relief claimed. The defendant has not been damaged by the delay, nor has there been any loss of testimony since a full knowledge of the fraud by the complainant.

The suggestion that the claim is one for fraud, and not assignable, is without merit. It is true, as a general proposition, that a distinct right of action for fraud is not assignable; but where the right to enforce a claim which is in itself assignable depends upon showing fraud incidentally, the rule has no application. The assignment of the claim carries with it the right to employ any remedy which is open to the assignor. See *Sweet v. Converse*, 88 Mich. 1.

A further objection is made that the complainant failed to make competent proof of the allowance of his claim by the probate court. It is insisted that the proof fails to show that any order allowing the claim against the estate was ever made. Mr. Paddock, who was judge of probate at the time that the allowance was claimed to have been made, testifies that an order allowing the claim was in fact made on the 20th day of December, 1887. In this he is supported by the testimony of Mr. Mathews, who was present when the order was announced. It is true that no order is now found, but we think it may fairly be inferred that it has been lost from the records. Under the circumstances, parol proof may be given of the contents. *Drake v. Kinsell*, 38 Mich. 232.

The decree below will be affirmed, with costs.

The other Justices concurred.