Argued January 9, decided January 21, 1913.

### SPERRY v. STENNICK.

(129 Pac. 130.)

**Fraud—False Representations—Damages—Transfer of Property —"Valuable Consideration."**

1. Where a corporation was induced to purchase an interest in real property by defendant's alleged false representations and thereafter transferred such interest to plaintiffs, an allegation, in a complaint to recover damages for the fraud, that the corporation transferred its interest in the property "for a valuable consideration," did not show that the transfer was for an adequate consideration, so that the corporation had suffered no damage by the fraud.

**Assignments—Rights Subject to Assignment—Choses in Action —Torts.**

2. Tortious acts of a party causing damage to another create a right of action which abates with the death of the person sustaining the injury, and therefore cannot be assigned so as to enable the assignee to sue for the wrong inflicted; but a tortious act causing damage to property, or an act of negligence producing injury to a person generally, creates a cause of action that survives, and is therefore assignable.

**Assignments—Causes of Action—False Representations—Money Received.**

3. A right of action for money received arising from defendants' false representations with reference to the purchase of certain land, by reason of which plaintiff's assignor was induced to pay defendants money for an interest in real property, was a cause of action that would survive, and was therefore assignable.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by Eliza A. Sperry and Lucile Lemcke against Parker Stennick and L. S. Thomas to recover money. The complaint charges, in effect: That on September 22, 1906, the H. W. Lemcke Company was duly incorporated, and the plaintiffs became the owners of a large number of shares of its capital stock. That about

January 22, 1907, the defendants represented to the corporation and its proper agents that as partners they had secured an option for the purchase of a tract of land, 4,300 feet in length, at $15,600; that being the lowest sum for which the premises could be secured; that they had paid on account of the purchase $7,000, but were unable to complete their contract, whereupon they proposed that if the corporation would pay $7,800, or one-half of the consideration, it should receive an unincumbered title to a moiety of the land. That the defendant also represented that various persons were endeavoring to purchase the premises; that the real property was worth $25,000, and they detailed the contemplated immediate demands for the land by firms and corporations, saying that, unless the title to the real property was secured under the defendants' contract, it could not be obtained for such a small price as they had agreed to pay; and that under the offer then made they were not receiving and would not obtain any commission or compensation for negotiating the purchase or for any services connected therewith. That they further represented that a right of way granted to a railroad company over and along the tract referred to was only 30 feet in width and that the tide lands to be granted in front of the premises extended 400 feet into the river. That the corporation and its agents, believing such representations to be true, and relying thereon, accepted the proposal, whereupon the defendants, on January 28, 1907, acting for themselves and the corporation, secured from Mary W. Newsom and her husband, the asserted owners of the real property, a contract for the purchase thereof for $8,600, one-half of which sum was to be paid in installments and the remainder to be evidenced by a promissory note secured by a mortgage of the premises, which contract was taken in the name of H. W. Lemcke, the president and general manager of the corporation,

Sig. 4

in trust, however, for it and the defendants. That on February 9, 1907, the corporation and the defendants, respectively, subscribed their names to a writing declaratory of their several rights in and to the real property, and containing a clause to the effect that, if a title to the premises could not thus be secured, the agreement should be void. Thereupon the corporation paid $3,000 on account of the installments mentioned, taking as evidence thereof Mrs. Newsom's receipts, which provided that, if a warranty deed failed to convey a good and sufficient title to the land, the money so received would be returned. That further relying upon such representations, and believing them to be true, the corporation paid to the defendants as partners $7,000 for conveyances of their undivided one-half of the land; they agreeing that if the title to the premises was not perfect the sum of money so received would be repaid. That about October 26, 1907, the plaintiffs surrendered all their interests in the corporation, adjusted and settled their claims against it, and for a valuable consideration received from it a deed of all its right, title, and interest in and to the real property, to the contracts for the purchase of the premises, and to the sums of money paid by it thereon, and ever since that time they have been, and now are, the owners thereof. That the representations so made were false, in that the defendants had never made any payment on account of the purchase of the land. That the estate of Mrs. Newsom and her husband therein was valueless. That neither of the defendants had an option or contract to purchase the real property. That the right of way of the railroad company was 100 feet wide. That all the tideland in front of the premises had been conveyed by a prior owner thereof, and otherwise particularly negativing the truth of each of such representations. That on May 2, 1908, the corporate name of the H. W. Lemcke Company was legally changed to that of

the John P. Sharkey Company. That on May 14, 1910, the plaintiffs and the corporation first learned that the representations so made were false. That thereupon the plaintiffs immediately elected to rescind the several contracts, and so informed Mrs. Newsom and her husband, and also notified the defendants, tendering to the latter at the same time relinquishments of any interest the corporation or the plaintiffs may have received in or to the real property, and demanded from each of the defendants the sum of money they had so received. That Mrs. Newsom returned the sum of $3,000, but the defendants refused to make any payments of the money which they had obtained and declined to accept the offered relinquishments, whereupon they were brought into court for such parties. That by reason of the premises $7,000 so paid to the defendants is money had and received by them to and for the use and benefit of the plaintiffs who elect to sue on the implied contract to repay that sum with interest.

The answer denied the material averments of the complaint, and for a further defense averred, as far as deemed material herein, that Stennick secured from Mrs. Newsom an option to purchase the tract of land at the price of $8,600, on account of which he had paid $200 and had agreed with Thomas to give him a half interest in the contract, and thereupon the defendants solicited the corporation to become a party to the transaction.

The reply put in issue the allegations of new matter in the answer, and, the cause having come on for trial, the court refused to receive any evidence of the alleged false representations, and, when the plaintiffs had otherwise introduced their testimony and rested, a judgment of nonsuit was given, and they appeal.          Reversed.

For appellants there was a brief with oral arguments by *Mr. E. E. Heckbert* and *Mr. Martin L. Pipes*.

For respondents there was a brief over the names of
*Messrs. Malarkey, Seabrook & Stott,* and *Mr. William A.
Cleland,* with an oral argument by *Mr. Ephraim B. Sea-
brook.*

Mr. Justice Moore delivered the opinion of the court.

1. The testimony so admitted and offered tended to
establish each material averment of the complaint, and,
such being the case, it is maintained that an error was
committed in refusing to submit the cause to the jury.
The reason announced by the court for excluding the tes-
timony offered to establish the falsity of the alleged rep-
resentations was that it appeared from the averments
of the complaint that, before this action was instituted,
the Lemcke Company had sold to the plaintiffs all its
interest in the subject-matter for a valuable considera-
tion, and, as the corporation was thereby uninjured, it
had no right of action which it could assign. The con-
clusion thus reached was evidently based on the decision
in the case of *McMillan* v. *Batten,* 52 Or. 218 (96 Pac.
675), where it was held that the purchasers of corporate
stock, when sued for the price, were not entitled by way
of a counterclaim to recover the price paid for a portion
of the stock because of the alleged fraudulent representa-
tions as to the condition of the corporation, where it was
shown that on the next day after purchasing the shares
defendants sold and transferred them to a stranger for
the same amount they had paid for the stock, unaccom-
panied by any evidence of an obligation on their part
to take back the stock, or make good what they had
received therefor; they having induced the latter to
indorse the stock so that they might make good their
pleaded offer to return possession thereof. It was also
ruled that evidence tending to prove that defendants, soon
after having made the purchase which they claimed a
right to rescind for the sellers' fraud, sold the property

to others for the same amount which they had paid, destroyed any inference of damages sustained by them, in the absence of an averment and proof that they were engaged in the business of buying and selling for profit, and had bought the stock for that purpose.

If the initiatory pleading herein had declared that an "adequate compensation" had been received by the corporation for a transfer of its interests in the contracts and of its estate in the premises, the conclusion might have been deduced that the Lemcke Company had sustained no injury by the transaction. When it is remembered that one of the classes of an inducement to a contract is either good or valuable and that the latter consideration is founded upon money or something convertible into or having the value of that medium of exchange, any sum thereof, however trivial, such as $1.00, satisfies asseveration of the complaint in this particular, thus showing a possible loss to the corporaation of $6,799, and showing the determination reached does not legitimately follow from the premises admitted.

2. The question will be considered whether or not, under the averments of the complaint, any right of action, growing out of the defendants' alleged fraudulent representations, could have been assigned by the corporation to the plaintiffs. The rule is nearly universal that tortious acts of a party causing damages to another creates a right of action which abates with the death of the person sustaining the injury and therefore cannot be transferred so as to confer upon the assignee authority to maintain a suit for the wrong inflicted. *Weller* v. *Jersey City, etc., Street R. Co.*, 68 N. J. Eq. 659 (61 Atl. 459: 6 Ann. Cas. 442). If, however, the wrongful act is of such a character that the damages resulting therefrom will, upon the death of the person injured, survive to his personal representative, the right of action is assignable. A wrong committed upon a person resulting in damages

by reason of assault and battery, breach of promise of marriage, false imprisonment, malicious prosecution, slander, etc., are causes which do not survive the death of the injured party, and hence they cannot be assigned so as to create a right of action in another. *Dahms* v. *Sears,* 13 Or. 47, 58 (11 Pac. 891). A tortious act causing damages to property, or an act of negligence producing an injury to a person generally, creates a cause of action that survives and is therefore assignable. 4 Cyc. 24.

3. Adverting to the division of wrongful acts referred to a text writer says:

"Actions for deceit growing out of frauds which do not properly fall in either of the classes just mentioned have, in some jurisdictions, been said to be assignable, while in others the contrary rule has been laid down." 4 Cyc. 25.

Thus in *Zabriskie* v. *Smith,* 13 N. Y. 322 (64 Am. Dec. 551), the New York Court of Appeals determined that an action for damages for deceit in falsely representing the credit of a person did not survive and was not assignable. It did not appear in that case that the defendant had received any pecuniary advantage from his alleged fraudulent representations, and an action for money had and received would not lie. Referring to the doctrine announced in *Zabriskie* v. *Smith,* 13 N. Y. 322 (64 Am. Dec. 551), in a note to 2 Am. & Eng. Ency. Law (2 ed.) 1024, it is said:

"The decision in this case appears to have been made without reference to the New York statutes then in force, and its authority has been somewhat shaken by subsequent decisions in which it has been criticised and disapproved"—citing several animadverting cases from that state.

In *Byxbie* v. *Wood,* 24 N. Y. 607, 610, which was an action based on alleged fraudulent representations of the defendant whereby he received from the plaintiff's assignor money which was undertaken to be recovered, it was ruled that the averments of the complaint did not

necessarily stamp the action as arising out of tort or show that the cause was not assignable. In deciding that case, Mr. Justice GOULD, speaking for the court, observed:

"The facts, as found by the referees, are that, by false representations and the alteration of bills and vouchers, the defendant himself received from Marvine large sums of money to which he was not entitled; and they have found that the plaintiffs are entitled to recover, not for any fraud, but for the money which the defendant had so received, and which, being so received, he had no right to retain. This state of facts does not necessarily require an action to be brought for the tort, even if it allows one to be so brought. Such facts always raised, in law, the implied promise which was the contract cause of action in *indebitatus assumpsit* for money had and received. Having money that rightfully belongs to another creates a debt; and, wherever a debt exists without an express promise to pay, the law implies a promise; and the action always sounds in contract." To the same effect, see Pomeroy's Code Rem. (3 ed.), Section 570.

The legal principle last announced would authorize the maintenance of this action, which, it will be remembered, is predicated on the defendants' implied promise to repay the money which they had received. The corporation transferred, not a claim for damages arising from a personal injury, but a right of property for the redress of which it could have maintained an action, which right was assignable, and an action can be maintained thereon by the plaintiffs for money had and received to their use by the defendants. "It is true as a general proposition, that a distinct right of action for fraud," says Mr. Justice MONTGOMERY in *Howd* v. *Breckenridge,* 97 Mich. 65, 69 (56 N. W. 221, 222), is not assignable; but, where the right to enforce a claim which is in itself assignable depends upon showing fraud incidentally, the rule has no application. The assignment of the claim carries with it the right to employ any remedy which is open to the assignor." In speaking of one of the remedies thus afforded, an author says:

"The count for money had and received is a very important one and, in some respects, differs from all other common law actions. It is a sort of a connecting link between law and equity, and, by the use of the very convenient fiction of an implied promise, this court will lie to recover any money which the defendant has received, or in any manner obtained possession of which, in equity and in good faith and conscience he ought to pay over to the plaintiff. This covers a wide and peculiar range of causes of action. It is limited, however, to cases in which the original cause of action was for money, or something which the parties have agreed to treat as money." Green, Pl. & Pr. Under the Code, Section 658.

In the case at bar the complaint sufficiently avers that the defendants received money to which in equity and good conscience they were not entitled, and, such being the case, the pleading is adequate, and errors were committed in refusing to receive evidence of the facts so alleged and in granting the nonsuit.

The judgment is therefore reversed, and the cause remanded for such further proceedings as may be necessary not inconsistent with this opinion. REVERSED.