Argued September 28, reversed November 9, 1915.

## COOPER *v.* HILLSBORO GARDEN TRACTS.*

(152 Pac. 488.)

**Pleading—Complaint—Sufficiency.**

1. Where no objection to the sufficiency of the complaint is made until the introduction of evidence, it is entitled to all the intendments in its favor, which could be invoked after a decision on the merits of the controversy.

**Pleading—Complaint—Sufficiency—Objection to Evidence.**

2. In a suit to rescind a contract for the purchase of land on the ground of misrepresentations, the complaint, which in addition to a detailed specification of the statements made by defendant averred that they were false and known to be false at the time made, that they were made for the purpose of inducing the plaintiff to purchase the land, and that plaintiff entered into the agreement relying on the representations, and would not have done so had he known their falsity, is sufficient, when not attacked until the introduction of evidence, though not specifically pointing out wherein the representations were untrue.

**Vendor and Purchaser—Remedies of Purchaser—Right to Rescind.**

3. Where plaintiff, after discovering the falsity of the representations by which he was induced to purchase land, remained in possession for a number of months and then leased the premises before beginning suit, his delay was an affirmance of the contract precluding rescission.

[As to forfeiture of vendee's rights, see note in 31 **Am. Dec.** 278.]

**Assignments—Validity of Assignments.**

4. A mere litigious right cannot be assigned; consequently one purchaser of land cannot assign to another the right to sue for a rescission of the contract.

**Assignments—Contracts.**

5. Where purchasers of land assigned their contracts to plaintiff, the assignment was an affirmance of the agreement, and so precluded suit by plaintiff for rescission of the contracts on the ground of misrepresentations; plaintiff having no more rights than his assignors.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.   Statement by MR. JUSTICE HARRIS.

McLain Cooper seeks to cancel 10 land contracts, only one of which was made with him, while the others

---

*On waiver of purchaser's right to rescind, see note in 30 **L. R. A.** (**N. S.**) 872.                                                REPORTER.

were signed by different persons.   The Hillsboro Garden Tracts, a private corporation, paid $85,000 for 473 acres of land, known as the Connell farm, and then platted and subdivided most of the property.   Fifty or 60 acres of the tract are located within the city limits of Hillsboro and close to the courthouse; and the remainder lies just beyond the municipal boundaries. The contracts were all signed by the defendant, but the execution of them was brought about through the agency of either the Ada Land Company or the Smith-Willoughby Company, real estate brokers, with whom the land had been listed.

On February 12, 1912, defendant agreed to sell, and the plaintiff agreed to purchase, lots 39 and 40 in block 18, Garden Tract addition to Hillsboro, and tracts 7 and 8 in block 4 of Hillsboro Garden Tracts for $3,256.50 of which $825 was paid at the time of entering into the agreement, entitling the plaintiff to take possession of the land, and the balance of the purchase price was to be paid in specified installments.   Contracts which were identical in terms with the one signed by the plaintiff, except as to the description of the land and the price to be paid, were made by the defendant on April 1, 1912, with Fred E. Koch; on April 15, 1912, with Fred E. Koch; on March 28, 1912, with Wm. Rose; on April 23, 1912, with J. E. Rose; on July 5, 1912, with J. B. Wirz and S. R. Wirz; on March 1, 1912, with J. A. Johnson; on March 1, 1912, with Edward L. Johnson and Ray Pierson; on March 16, 1912, with E. Seidel, and on July 30, 1912, with Frank A. Smith.   Payments were made on the several agreements, and improvements were placed upon each tract of land except the properties described in the writings signed by J. E. Rose and Frank A. Smith and the one executed by Fred E. Koch on April 15, 1912.   On April

28, 1913, Fred E. Koch transferred both of his contracts to the plaintiff by executing assignments, one of which reads:

"I, Fred E. Koch, the party of the second part in the within contract, for and in consideration of one dollar and other valuable consideration to me in hand paid, the receipt whereof is hereby acknowledged, do hereby sell, assign and convey unto McLain Cooper of Hillsboro, Oregon, all my right, title and interest in, to and under the said within contract, including all rights of action or otherwise, to me accrued or hereafter to accrue thereunder, together with all other rights of whatever nature or kind under said contract, in connection therewith or in the making thereof."

Similar assignments were made by Wm. Rose and E. Seidel on April 28th; by Edward L. Johnson and Ray Pierson on April 30th; by J. A. Johnson on May 2d; by J. E. Rose on May 3d; and by the Wirzs and Frank A. Smith on May 5th.

On May 19, 1913, the plaintiff tendered to the defendant his individual contract, as well as the nine agreements which had been assigned to him, together with a quitclaim deed to the land embraced within the 10 writings, and demanded that the defendant return to him all the payments made on the several contracts, and that the Hillsboro Garden Tracts make reimbursement for the improvements placed upon the properties. The defendant refused to comply with the demand, and thereafter the plaintiff commenced this suit for the purpose of rescinding the written agreements and recovering the installments paid and the value of the improvements made by the contracting purchasers.

The complaint contains 10 causes of suit, the first of which is based upon the contract made between the plaintiff and defendant. It is alleged that for the purpose of inducing the plaintiff to enter into the agree-

ment, the defendant falsely represented to him that, if he would enter into the contract, the defendant would furnish employment to him during the summer, fall and winter of 1912 in making improvements upon the streets and roads on and adjacent to the property owned by defendant; that the defendant would immediately begin the grading and clearing of streets in and about its property; that it would lay cement sidewalks; that it would erect 17 houses, would build three bridges over McKay Street, would erect a sawmill, and would give plaintiff employment upon all these improvements; that plaintiff could have the privilege of cutting cordwood from the timber; that the defendant would furnish to plaintiff all the work he could do at the rate of $2.50 per day and at the rate of $6 per day for a man and team—all of which would enable the plaintiff to earn a large part of the purchase price to be paid by him.   It is further alleged that the defendant represented that the lots and tracts were beaver dam lands and very fertile; that the defendant would furnish and operate daily and in season a vegetable car between Hillsboro and Portland; that the World's Keep Fresh Company consisted largely of the stockholders of the defendant; and that it was establishing a preserving plant in the City of Hillsboro for the preserving of vegetables and fruits.   The complaint also charges that one Summerland, who was in the employ of defendant, was introduced to plaintiff under the name of Thompson, and that in the presence of Cooper and for the purpose of baiting him, Summerland pretended to pay defendant $500 as part payment of certain lots near the ones which plaintiff afterward agreed to purchase.

It is alleged in the second and third causes of suit that the defendant represented to Fred E. Koch that

it intended to and would immediately grade Jackson Street through its property, and would at once lay cement sidewalks along that street; that it intended to and would immediately grade Division Street and put Beaver road in first-class shape; that Fred E. Koch should have work in making these and other improvements on adjacent properties at the rate of $2.50 per day, and that he would be enabled to earn money to make the payments provided for in his agreements; that the defendant was erecting 17 houses; that it would immediately construct a sawmill for the manufacture of timber on 60 acres of land belonging to it, and that Fred E. Koch should have employment in any of the work; that the defendant would run daily a vegetable car from Hillsboro to Portland, and would carry vegetables and berries at low rates; that the land was very fertile and, in the previous year, had yielded 75 bushels of wheat per acre; and that it was new land, having been cultivated two or three years.

The agreement with Wm. Rose furnishes the subject for the fourth cause of suit, and it is alleged that the defendant represented to him that Division Street would immediately be graded and cement sidewalks laid; that all the streets would be immediately grubbed out, graded up and good roads made; that the defendant had contracted for and would have built 17 houses and 3 bridges; that when Wm. Rose stated that he must have work if he bought any of the lots, the defendant represented that he could have all the work that he might desire, and that the defendant would put in one or two sawmills to cut the timber belonging to the Hillsboro Garden Tracts; that all the work would be done as rapidly as men could be procured to do the same; and that the defendant agreed that Wm. Rose

should have work as long as he wanted it from the defendant at $2.50 per day.

The fifth cause of suit is based upon the contract with J. E. Rose, and it is alleged that the defendant represented to him that it would, and intended immediately, to grade Jackson Street, and that all the streets would be graded as rapidly as men could be procured to do the work; that 3 bridges and 17 houses would be erected on its property, and that J. E. Rose should have all the work he desired at the rate of $2.50 per day in making the improvements mentioned and in working in the sawmill of defendant, which it said it would erect immediately.

The sixth cause of suit has to do with the contract made with J. B. Wirz and S. R. Wirz. The complaint avers that the defendant represented that it was having and would have a large amount of work done upon the streets and roads in its properties, and that the Wirzs would have employment from the defendant as long as they desired to work, at good wages.

The seventh cause of suit relates to the contract with J. A. Johnson, to whom it is claimed defendant represented that it was having and immediately would have built 3 bridges and several houses on its properties, and that the streets were to be graded and cement walks put down as far as the acre tracts; that the defendant had a large amount of stock in the World's Keep Fresh Company of Hillsboro, Oregon, which company would purchase all the vegetables and berries Johnson could produce; that the defendant would operate a vegetable car every day from Hillsboro to Portland and thus furnish a good market for such vegetables as Johnson might raise; that defendant told Johnson he could have work as long as he might desire it in making the improvements mentioned; that the

land agreed to be purchased by Johnson was all cleared and ready for the plow, although stumps and trees formerly on the land had been nearly burned down level with the ground and covered with earth.

The eighth cause of suit involves the contract made with Edward L. Johnson and Ray Pierson, to whom it is averred the defendant represented that it was having buildings erected upon its property, streets graded and sidewalks laid; that it would soon start a sawmill near by, and that the defendant would employ Johnson and Pierson in all or any of such work, and that they would thus have employment for some time.

The fraud relied upon in the ninth cause of suit arises out of the representations alleged to have been made to E. Seidel. The complaint states, further, that the defendant represented to him that it was having roads, bridges and sidewalks graded and constructed; that it was building and would immediately build 17 houses, stating that the contract had already been let for the houses; that the defendant would locate and operate a sawmill to cut timber belonging to the company; that the defendant would grade up the road to 4 feet in height and above the level of the water; that it would put in a new bridge; that upon all the work and improvements mentioned Seidel would be employed by the defendant for $2.50 per day as long as he desired this work; that the World's Keep Fresh Company would purchase all the vegetables and berries he could produce on the land agreed to be purchased by him; and that the defendant would operate daily a vegetable car between Hillsboro and Portland, thus affording a market for such vegetables as he might grow.

The tenth cause of suit arises out of representations alleged to have been made to Frank A. Smith. The

plaintiff avers that the defendant stated to Frank A. Smith that it would immediately grade Jackson Street through its land and would lay cement walks on both sides of that street, that there was a good building site on the land agreed to be purchased by him, and that the defendant would grade a road to such land, thereby enabling Smith to pass in and out from his land at all seasons of the year; the defendant knowing, however, that the road for a long distance is annually under water for two or three months and is impassable for four or five months of the year. It is further claimed that the defendant represented to Smith that he could have employment upon the improvements being made and to be made for the defendant.

The answer denies all the accusations of fraud. As a defense to the first cause of suit the defendant alleges that Cooper leased the premises to J. W. Brown and placed him in possession; that the plaintiff had been collecting rents which he appropriated to his own use, and that he is not in a position to deliver possession of the land to defendant. As an affirmative defense to each of the remaining nine causes of suit the defendant alleges that the plaintiff is now, and has at all times mentioned in the complaint been, in possession of the premises, collecting the rent and profits therefrom and applying the same to his own use. The written contracts do not contain any of the alleged false representations relied upon by the plaintiff.

The trial resulted in a decree which cancels the 10 land contracts, awards plaintiff a judgment for $2,403.75, the sums of money paid to defendant by plaintiff and his assignors, and for the additional sum of $2,432.55, the value of the permanent improvements, together with costs and disbursements. The defendant appealed.                                    REVERSED.

For appellant there was a brief over the names of *Messrs. Huston & Huston, Mr. W. F. Magill* and *Mr. George W. Stapleton,* with oral arguments by *Mr. Samuel B. Huston* and *Mr. Oliver B. Huston.*

For respondent there was a brief over the names of *Messrs. Thacker & Hancock* and *Mr. George I. Brooks,* with an oral argument by *Mr. G. L. Thacker.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1, 2. This record presents a situation where the plaintiff seeks to rescind, not only his own contract to purchase land, but also to cancel nine similar agreements which had been executed by different persons and afterward assigned to him, predicating his prayer for relief upon representations which related either to the land itself, or to what the defendant would do, or the purchaser could do. The defendant interposes an objection at the very threshold of the inquiry; and the Hillsboro Garden Tracts contends that the complaint does not sufficiently plead fraud, and that therefore it is neither necessary to determine what representations were made by the defendant, nor to decide whether they are actionable. The essence of the argument is that the pleading does not point out wherein the representations were untrue, and that a mere narrative of the statements made by the defendant, when supplemented only by a general declaration of falsity, is not enough to sustain a decree, and does not measure up to the standard fixed in *Specht* v. *Allen,* 12 Or. 117 (6 Pac. 494); *Misner* v. *Knapp,* 13 Or. 140 (9 Pac. 65, 57 Am. Rep. 6); *Leasure* v. *Forquer,* 27 Or. 334 (41 Pac. 665); *Leavengood* v. *McGee,* 50 Or. 233 (91 Pac. 453); *Mc-Millan* v. *Batten,* 52 Or. 218 (96 Pac. 675). The first

cause of suit is a fair example, and may be used as an illustration of all the causes of suit. In addition to a detailed specification of the statements made by the defendant the complaint in substance avers that the claims, statements and representations made by the defendant were false, and were well known to it, at the time when made, to be wholly untrue, and that the statements were made to the plaintiff for the purpose of deceiving, overreaching, and inducing plaintiff to purchase the land and to make the cash payment. The pleading also gives notice to the defendant that the plaintiff entered into the agreement because he believed and relied upon all the false statements, representations and promises made by the defendant, and that he would not have signed the contract nor made any payment had he not believed in and relied upon the representations, all of which were untrue, and known to the defendant to be false when made. The defendant did not attack the complaint by filing a demurrer, but contented itself by waiting until the trial had commenced, when an objection was offered to the introduction of testimony. The complaint might have been vulnerable to a demurrer if interposed before the commencement of the trial; but, no objection having been made until the introduction of testimony, the complaint must be liberally construed, and is entitled to all the intendments in its favor which could be invoked after a decision on the merits of the controversy: *Schoellhamer* v. *Rometsch,* 26 Or. 394 (38 Pac. 344); *Currey* v. *Butcher,* 37 Or. 380 (61 Pac. 631); *Creecy* v. *Joy,* 40 Or. 28 (66 Pac. 295); *Patterson* v. *Patterson,* 40 Or. 560 (67 Pac. 664); *Bade* v. *Hibberd,* 50 Or. 501 (93 Pac. 364); *Davis* v. *Mitchell,* 72 Or. 165 (142 Pac. 788); *Weishaar* v. *Pendleton,* 73 Or. 190 (144 Pac. 401); *Smith* v. *National Surety Co.,* 77 Or. 17 (149

Pac. 1040). The averment that the statements made by defendant were false and known to it to be wholly untrue was, in the absence of an objection by demurrer, sufficient notice to the defendant that the plaintiff would contend at the trial that the declarations made by the agents of the corporation were utterly untrue, and that the Hillsboro Garden Tracts made the representations for the purpose of deceiving the plaintiff, with the intention of not fulfilling any of them; and therefore the complaint is not fatally deficient.

3. The defendant contends that Cooper is precluded from rescinding the agreement. It will be recalled that the plaintiff entered into the land contract on February 12, 1912. Cooper immediately took possession of and occupied the property, and at once commenced to make improvements, the value of which the complaint asserts is $1,435.85. The plaintiff says that about three weeks after he took possession he ascertained that some things were not as represented; that at the end of about three months, which would be in May or June of 1912, he told the defendant "that the matter had been misrepresented," and "denied nearly all of their representations, except what they represented to me what could be grown on the land, and I told him that I didn't know anything about that."

On August 28, 1912, Cooper and others addressed a communication to the Ada Land Company, requesting a statement "of the inducements and improvements of property the Ada Land Company offered to" them "if they would purchase land from the Ada Land Company."

On December 12, 1912, Cooper wrote a letter to the defendant, expressing a desire to lease 2½ acres owned by the corporation and located near the land occupied by plaintiff. On April 23, 1913, Cooper

rented the land described in his contract to Wm. Hickethier for a period of one year, commencing with May 1, 1913; and on April 28th, five days afterward, four land contracts were assigned to the plaintiff for the purpose of enabling Cooper to commence this suit. It is true that the latter testified that he had made all arrangements for the commencement of this suit before entering into the lease with Hickethier, but the fact nevertheless remains that the lease was made before the complaint was filed. It must also be noted that in January, 1913, Cooper consulted with an attorney with reference to commencing a suit for the cancellation of his contract; and afterward, in September, 1913, he built a cow barn on the premises. Before signing the agreement with the defendant, Cooper went over the land and carefully examined it; he saw that water was over a portion of the premises; he could see that his land was "pretty near all on the hillside" and slopes down into the bottom; he observed that the land was new, had never been plowed, and he saw where stumps had been pulled out with a donkey. It is apparent from his own testimony that the plaintiff became aware of all the facts, except the fertility of the land, as early as May or June in 1912, and he certainly became aware of the quality of the land not later than the fall of that year; and, moreover, the overwhelming weight of the evidence establishes the fact that the soil is of an excellent quality. He admits that he consulted an attorney in January, 1913, with a view of rescinding, and yet in the following April he leased the land in dispute, and subsequently placed permanent improvements on the property. The delay on his part, together with his remaining in possession of the land and treating it as his own, evidence an intention to abide by the contract, and therefore he forfeited any

right to rescind the writing signed by him: *Scott* v.
*Walton,* 32 Or. 460 (52 Pac. 180) ; *Vaughn* v. *Smith,* 34
Or. 54 (55 Pac. 99) ; *Elgin* v. *Snyder,* 60 Or. 297 (118
Pac. 280) ; *Van De Wiele* v. *Garbade,* 60 Or. 585 (120
Pac. 752) ; *Whitney* v. *Bissell,* 75 Or. 28 (146 Pac. 141,
L. R. A. 1915D, 257) ; *Precious Blood Society* v.
*Elsythe,* 102 Tenn. 40 (50 S. W. 759) ; *Bell* v. *Keepers,*
39 Kan. 105 (17 Pac. 786).

4, 5. The defendant challenges the right of Cooper
to maintain a suit for the rescission of the land agree-
ments which were assigned to him. It is a rule of gen-
eral application that a mere litigious right cannot be
assigned: 4 Cyc. 8, 13; 2 R. C. L., p. 612; *Gruber* v.
*Baker,* 20 Nev. 453 (23 Pac. 858, 9 L. R. A. 302).
Private contracts may usually be assigned (4 Cyc. 20) ;
and, although it is frequently stated that the right to
complain of fraud is not a merchantable commodity
(*Tufts* v. *Matthews* (C. C.), 10 Fed. 611), nevertheless,
a claim arising out of a tort affecting the estate of the
assignor may be assigned, survivorship being the test
of assignability (*Dahms* v. *Sears,* 13 Or. 47 (11 Pac.
891) ; *Sperry* v. *Stennick,* 64 Or. 96 (129 Pac. 130) ;
*Zabriskie* v. *Smith,* 13 N. Y. 322 (64 Am. Dec. 551) ;
*Graves* v. *Spier,* 58 Barb. (N. Y.) 349; 4 Cyc. 23; 2
R. C. L. 613; 2 Am. & Eng. Ency. Law, 1017, 1023).
While the naked right to complain of a fraud may not
be assigned separate and apart from a claim or thing
having a legal existence and value owned by the
assignor, nevertheless the assignment of the claim or
thing owned generally carries with it all of the reme-
dies which might have been available to the assignor:
*Howd* v. *Breckenridge,* 97 Mich. 65 (56 N. W. 221).
The case of *Sperry* v. *Stennick,* 64 Or. 96 (129 Pac.
130), furnishes an apt illustration of the assignability
of a right of property, and similar exemplifications ap-

pear in *Graves* v. *Spier,* 58 Barb. (N. Y.) 349, and *Haight* v. *Hayt,* 19 N. Y. 465. There are numerous holdings to the effect that where, by means of fraudulent practices, A has been induced to convey his land to B, and afterward A deeds the same land to C, the latter may successfully maintain a suit against B for the annulment of the conveyance which was obtained by fraud; and many illustrations may be found in authoritative cases where the assignee of a claim may prosecute a suit to set aside a conveyance which was made for the purpose of defrauding creditors even though the deed was executed before the assignment of the claim. Examples of the first class may be found in *Dickinson* v. *Burrell,* L. R. 1 Eq. 337; *McMahon* v. *Allen,* 35 N. Y. 403; *Traer* v. *Clews,* 115 U. S. 528, (29 L. Ed. 467, 6 Sup. Ct. Rep. 155); *Connecticut Mut. Life Ins. Co.* v. *Smith,* 117 Mo. 261 (22 S. W. 623, 38 Am. St. Rep. 656), and in *Houston* v. *National etc. Loan Assn.,* 80 Miss. 31 (31 South. 540, 92 Am. St. Rep. 565). Illustrations of the second class appear in *Emmons* v. *Barton,* 109 Cal. 662 (42 Pac. 303), *National Valley Bank* v. *Hancock,* 100 Va. 101 (40 S. E. 611, 93 Am. St. Rep. 933, 57 L. R. A. 728), and *Howd* v. *Breckenridge,* 97 Mich. 65 (56 N. W. 221).

An analysis of *Sperry* v. *Stennick,* 64 Or. 96 (129 Pac. 130), and kindred cases and an examination of the other two classes of adjudications will at once reveal the fact that there the maintenance of a judicial proceeding, even though resting upon an accusation of fraud, is quite consistent with the act of assignment. When A conveys land to C, after having deeded the same land to B, the very act of making the conveyance to C is of itself a declaration that A refuses to abide by the transfer to B, where the latter employed fraud in procuring the land. It must be borne in mind, how-

ever, that this is a proceeding brought for the purpose of rescinding the transaction in its entirety and placing the parties, as near as the circumstances will permit, in the same positions they occupied before signing the agreement; and the plaintiff must, of necessity, accept one of two alternatives: Either, that the assignors parted with all their rights by making an absolute transfer of their entire interests in the contracts and in the lands; or else that the sole purpose of the assignment of the contracts was to enable Cooper to sue. When the assignments were made, not only Cooper, but the assignors, knew all that was known to them at the time of the trial; the contracts were transferred with full knowledge of the alleged fraud; and therefore the assignments of all the rights arising out of the contracts were themselves acts which affirmed rather than disaffirmed the agreements: *Scott* v. *Walton,* 32 Or. 460 (52 Pac. 180). If by affirming the contract the assignor waived his right to object, then Cooper cannot complain of any fraud practiced upon the assignor, because the plaintiff cannot have any greater right than was possessed by his assignor. Cooper cannot repudiate these land contracts if, with a knowledge of all the facts, the assignors affirmed them. If the plaintiff hangs his case upon the other horn of the dilemma —and he does, because he says in his brief that the "assignors of plaintiff assigned their interest in the lands for the purpose of bringing action and for the purpose of rescission"—then he is confronted with the rule that a mere naked right to sue for a fraud cannot be transferred alone and by itself: *Ryan* v. *Miller,* 236 Mo. 496 (139 S. W. 128, Ann. Cas. 1912D, 540); *Gruber* v. *Baker,* 20 Nev. 453 (23 Pac. 858, 9 L. R. A. 302). The plaintiff has, by his own conduct, waived any right to rescind his individual contract; and he cannot main-

tain this suit as assignee of the other contracts.    The decree is reversed, and the complaint and suit are dis-missed.                                                    DISMISSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BEAN concur.