HART et al. v. ADAIR et al.

W. C. HARDING LAND CO. v. HART et al.

(Circuit Court of Appeals, Ninth Circuit. August 20, 1917.)

No. 2686.

1. PRINCIPAL AND AGENT ⬦⟷8—CREATION OF AGENCY—CONSTRUCTION OF CONTRACT.

The owners of a tract of land made a contract with a land company by which the latter agreed to subdivide, improve, and sell the land at its own expense, at not less than a fixed minimum price per acre, for which it was to receive a share of the proceeds. Sales were to be made by the company in its own name, and the owners were not to be responsible for its contracts to make improvements, nor were they to receive any benefit from the enhanced price obtained by reason of such contracts. Held, that such contract did not make the company the agent of the owners for the sale of the land, nor render them liable for fraudulent misrepresentations made by the company to purchasers.

2. CANCELLATION OF INSTRUMENTS ⬦⟷43—SUIT FOR RESCISSION—DEFENSES—PLEADING.

In a suit for rescission of a contract for fraud, ratification, if relied on as a defense, must be pleaded.

3. APPEAL AND ERROR ⬦⟷173(1)—REVIEW—ERRORS NOT ASSIGNED.

Under rule 11 of the Circuit Court of Appeals (208 Fed. vii, 124 C. C. A. vii), that court is not required to consider a defense which was not pleaded, nor brought to the attention of the trial court, nor made the subject of any assignment of error, and it will not do so unless the error is plain and a failure to notice it will result in a miscarriage of justice.

4. CANCELLATION OF INSTRUMENTS ⬦⟷17—RIGHT OF ACTION—RATIFICATION.

Ratification, to bar a suit for rescission of a contract for fraud, must have been after the party had knowledge of the facts which entitled him to rescind.

5. CANCELLATION OF INSTRUMENTS ⬦⟷17—RIGHT OF ACTION—RATIFICATION.

The mere assignment by the purchaser of a contract for the sale and purchase of land is not a ratification of the contract which precludes a suit for rescission for fraud in its inception, but vests such right of action in the assignee.

6. COURTS ⬦⟷372(1)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

A federal court is not bound by a decision of the highest court of a state upon a question of general law, which was not rendered until after the commencement of the suit in which it is invoked.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by Mrs. Glenn D. Hart and Glenn D. Hart against the W. C. Harding Land Company, Walter Adair, J. T. Epperly, James P. Burns, F. S. Green, and L. B. Wallace. Decree for complainants against the corporation defendant, from which it appeals, and for the individual defendants, from which complainants appeal. Affirmed.

Glenn D. Hart and his wife brought a suit against the Harding Land Company, a corporation, and the individual defendants, Adair and others, for the rescission of three contracts for the sale and conveyance of three 10-acre tracts within a larger tract of land, and for the recovery of the installments of purchase money paid under the contracts. The individual defendants had

⬦⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

244 F.—57

purchased the larger tract, consisting of 461 acres, had made a cash payment thereon, and had given a mortgage to secure deferred payments. They entered into a contract with the Harding Land Company for the subdivision and sale of the land. The contract provided that the minimum price per acre to be charged to purchasers should be $200; that the first "$13,061 of sale contracts" should be placed in escrow for the original owners of the land; that the next "$10,000 of contracts" should become the property of the individual defendants; and that the balance realized should be equally divided between those defendants and the Land Company. The Land Company was to bear all expenses of the sales, and to receive a commission of 17½ per cent., to be deducted from the first cash received. The Harding Company proposed to plant orchards on the land, and the individual defendants stipulated that they should not be held responsible in any way for the Land Company's contracts for planting and care of trees, and they were to receive no benefit from the added price to be put on the land through such planting and care. The tracts were to be sold under the name of the Land Company, but the deeds were to be given by the individual defendants.

The tract was subdivided by the Land Company, and in the year 1910 lots Nos. 19 and 18 were sold to Hart and his wife respectively. Lot 17 was sold to Ella Peterson. These sales were made under an agreement on the part of the Land Company to plant the land with certain kinds of trees, and to cultivate the same for a period of 3 years. The plaintiffs alleged that they and Ella Peterson were induced to purchase the lands by certain fraudulent representations on the part of the Land Company, the representations being set forth in detail, and they alleged that Ella Peterson had transferred to the plaintiff Mrs. Hart all of her rights under her contract of purchase. The court below found that the evidence sustained the allegations of the complaint as to the fraudulent representations, and entered a decree of rescission on behalf of the plaintiffs, and adjudged that they recover from the Land Company the money advanced by them on account of their contracts of purchase; that the contract of Ella Peterson be rescinded, and that the money paid by her be recovered by Mrs. Hart; but adjudged that the individual defendants did not participate in the fraud, and are not answerable for the moneys so paid to the Land Company. From that portion of the decree discharging the individual defendants from liability, the plaintiffs have appealed. From the portion decreeing the rescission of the contracts and the return of the purchase money to the plaintiffs, the Land Company has appealed. Both appeals are presented in one record.

E. A. Lundburg, of Portland, Or., for appellants Hart.

O. P. Coshow, of Roseburg, Or., for appellant W. C. Harding Land Co.

B. L. Eddy, of Roseburg, Or., for appellees Adair and others.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] We find no error in that portion of the decree which discharges the individual defendants from liability for the moneys due the plaintiffs from the Land Company. It is contended that they are liable on the ground that the Land Company was their agent. We think that the Land Company was not the agent of the owners in dealing with purchasers of the land. The owners were not parties to any contract which the Land Company made with the purchasers. They stipulated that every contract made by the Land Company for sale of any of the land should be made in its own name. The Land Company was to survey, plat, and plant the land, and sell it at its own expense. The owners were not to be responsible for any of the expense of planting

or cultivating fruit trees. This is not a case of a broker negotiating sales as the agent of the owner. The Land Company was acting and selling in its own name. It had a contract which enabled it to deal with the property as its own. It is true that restrictions were placed on its power to sell, but this was only for the protection of the owners. It had no power to bind the owners by any representations of the quality of the land, or by promises of future improvement thereof. "An agent with restricted power to sell a tract of land at a given price has no power to bind his principal by any representations as to the quantity or quality of the land." National Iron Armor Co. v. Bruner, 19 N. J. Eq. 331; Samson v. Beale, 27 Wash. 557, 68 Pac. 180; Mayo v. Wahlgreen, 9 Colo. App. 506, 50 Pac. 40; Tucker v. Gibson, 80 Kan. 90, 101 Pac. 633; Kern v. Feller, 70 Or. 140, 140 Pac. 735.

Nor can we sustain the Land Company's contention that the evidence does not support the finding of the court below that the plaintiffs and their assignor were induced to enter into the contracts of purchase by means of false and fraudulent representations. The Land Company made these contracts with the plaintiffs and their assignor by agents in Dakota and Colorado. The agents represented to them that the land was worth $350 an acre; that it was choice orchard land; that it had been examined by an expert orchardist; that the soil was a sandy loam, and easily cultivated; that it was well drained and needed no irrigation; and they exhibited to them literature containing glowing representations of the profits to be realized on raising fruit on the lands, and assured them that is was unnecessary for them to come to Oregon to see the land; that they could rely upon the statements of the agents and the representations of the company, and that the expense of a trip to Oregon would be useless. There was evidence that the plaintiffs and their assignor, relying on these statements, entered into the contracts and made payments thereon. There is abundance of evidence that these representations were false and fraudulent, and, although the evidence is conflicting, the case is clearly one for the application of the rule that the finding of the court of first instance, who saw and heard the witnesses, will not be disturbed on appeal.

The Land Company contends that the plaintiffs should have been denied relief in equity for the reason that they and their assignor ratified the contracts of purchase; citing Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798, in which it was held that, where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it, and that, if he be silent and continues to treat the property as his own, he will be held to have waived the objection.

[2] To this it is to be said, first, that in order to avail itself of the defense of ratification it was necessary for the Land Company to plead it. 9 C. J. 1246, § 181; Northern Pac. R. Co. v. Kindred (C. C.) 14 Fed. 77. In its answer it pleaded no such defense, and even if it should be held that the evidence, which was admitted without objection tending to show ratification, might be sufficient to have authorized the court below to pass upon that question, it still does not appear that

the question was ever brought to the court's attention. Nor is it now suggested by any of the Land Company's assignments of error.

[3] The purpose of our rule 11 (208 Fed. vii, 124 C. C. A. vii) is to permit us to notice palpable error not assigned, where the failure· to consider it would result in injustice. Central Improvement Co. v. Cambria Steel Co., 201 Fed. 811, 120 C. C. A. 121; New York Life Ins. Co. v. Rankin, 162 Fed. 103, 89 C. C. A. 103; United States v. Bernays, 158 Fed. 792, 86 C. C. A. 52; Baltimore & O. R. Co. v. McCune, 174 Fed. 991, 98 C. C. A. 561; and P. P. Mast & Co. v. Superior Drill Co., 154 Fed. 45, 83 C. C. A. 157, a case in which the court said: The object of the rule "is to prevent the miscarriage of justice from oversight." It will hardly be contended that the alleged error is plain, or that our failure to take notice of it will result in a miscarriage of justice.

But, notwithstanding the absence of an assignment, we have examined the record, and we find it insufficient to show ratification. It is the Land Company's contention that in July, 1912, two years after they entered into the contracts, Hart and his wife acquired knowledge of the condition of the land, and that thereafter Hart's conduct was such as to show that he recognized the validity of the contract, he being his wife's agent. But the proof does not show that in 1912 either Hart or his wife acquired definite knowledge of the fraud that had been practiced upon them. In July of that year, in company with the secretary of the Land Company, they saw the land for the first time. Their testimony is that when they arrived at the land the secretary began to apologize for its condition, saying that the company had been hard up, and could not get help to take care of the land, and could not plow it, "and made all kinds of excuses"; that they found a few trees scattered over the tract; that weeds were higher than the trees; and that the secretary said: "Let's forget this; I will take you over to Garden Valley and show you some good land;" that when they went to the Land Company's office, Harding, the president, said: "I want to apologize to you people for the condition that land is in. I am going to try to sell that land for you people and locate you over in Garden Valley." Now, it appears that subsequent to that date, on November 6, 1912, Hart wrote to the secretary, stating that he was thinking seriously of caring for his wife's tract the coming year, and that on March 20, 1913, he wrote to Harding, asking after the growth of the· trees, and the condition of the land and Mrs. Hart's lot, and saying:

"I am still figuring that I can sell some of your tracts this coming summer. I am for you all the time. I hope that you will prosper and that your company will be the biggest in the world in a few years."

The facts which the plaintiffs discovered when they visited the land in 1912 should not be taken as going to show more than that the Land Company had not kept its promises to plant trees on the land, and properly till and care for .the same. In May, 1913, Mrs. Hart came again to Oregon and met Ella Peterson, and, in consequence of what she heard from her, Mrs. Hart placed the matter in her attorney's hands, and they caused an investigation of the facts to be made. That

investigation resulted in evidence that the land was wholly unfit for orchard purposes, owing to its poor drainage and the nature of the soil, and that its value was far less than it had been represented to be. Hart testified that he first learned of the falsity of the statements made by the Harding Land Company after Mrs. Hart's attorneys had caused an investigation to be made in May, 1913. He said: "Down to then I believed this land was as represented."

[4] The burden of proof to establish ratification was upon the Land Company. Pence v. Langdon, 99 U. S. 578, 25 L. Ed. 420. Ratification waives rescission only—

"where a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same." 9 C. J. 1198, § 77.

In Pence v. Langdon, 99 U. S. 578, 25 L. Ed. 420, the court said:

"Acquiescence and waiver are always questions of fact. There can be neither without knowledge. The terms import this foundation for such action. One cannot waive or acquiesce in a wrong while ignorant that it has been committed. Current suspicion and rumor are not enough. There must be knowledge of facts which will enable the party to take effectual action. Nothing short of this will do."

In Ward v. Sherman, 192 U. S. 168, 175, 24 Sup. Ct. 227, 230 (48 L. Ed. 391), the court cited with approval the following from Pollock's Principles of Contracts:

"The contract must be rescinded within a reasonable time, that is, before the lapse of a time after the true state of things is known, so long that, under the circumstances of the particular case, the other party may fairly infer that the right of rescission is waived."

In 9 C. J. 1200, § 80, it is said:

"Equivocal acts which do not clearly evince a purpose, with complete knowledge of the fraud, to retain the property as his own, will not defeat the right of the person defrauded to rescind."

This rule was applied in Watts v. British, etc., Mortage Co., 60 Fed. 483, 9 C. C. A. 98; Tarkington v. Purvis, 128 Ind. 182, 25 N. E. 879, 9 L. R. A. 607; Allen v. Railroad, 106 N. C. 515, 11 S. E. 576, 826; McLean v. Clark, 47 Ga. 24; and Whitcomb v. Sager, 82 Wash. 572, 144 Pac. 922.

[5] Nor can we assent to the proposition that Mrs. Peterson ratified her contract by the mere act of assigning it to Mrs. Hart.

[6] The Land Company cites and relies upon Cooper v. Hillsboro Garden Tracts, 78 Or. 74, 152 Pac. 488. That decision is not binding upon this court. It does not construe or apply any state statute. Nor does it create a rule of property. And, even if it did, it would not be controlling authority here; for it was not rendered until a year after the court below decided the case which is now before us, and not until long after the rights of the plaintiffs had accrued under the assignment. A federal court is not bound by the decision of the highest court of the state in such a case. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Carroll County v. Smith, 111 U. S. 556, 562, 4 Sup. Ct. 539, 28 L. Ed. 517; Julian v. Central Trust Co., 193

U. S. 93, 103, 24 Sup. Ct. 399, 48 L. Ed. 629; Great Southern Hotel Co. v. Jones, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778; Jones v. Great Southern Fireproof Hotel Co., 86 Fed. 370, 30 C. C. A. 108; City of Mankato v. Barber Asphalt Paving Co., 142 Fed. 329, 73 C. C. A. 439. Prior to the decision in Cooper v. Hillsboro Garden Tracts, it had been the law in Oregon, as held by the Supreme Court of the state, that such a contract as the one here under consideration was assignable. The general rule is expressed in 5 C. J. 891, as follows:

"In the absence of such statutory regulations, a right of action for fraud or deceit is generally held * * * assignable where the injury is regarded as affecting the estate, or as arising out of contract. The mere fact that the right to enforce a claim which is itself assignable depends upon showing fraud incidentally, does not make such right of action nonassignable."

To that text one of the authorities cited is Sperry v. Stennick, 64 Or. 96, 129 Pac. 130, a case in which it was held that a right of action for money received, arising from defendants' false representations with reference to the purchase of certain land, by reason of which plaintiff's assignor was induced to pay the defendants money for an interest in real property, was a cause of action that would survive and was therefore assignable. The decision in Cooper v. Hillsboro Garden Tracts should be confined in its effect to the question actually decided, which was that a mere naked right to sue for a fraud cannot be transferred alone and by itself. In that case the court relied upon what had been said in Scott v. Walton, 32 Or. 460, 52 Pac. 180, a case in which the opinion was written by Judge Bean, who decided the case which is now before us. That decision went no further than to hold that there is waiver of the right to rescind for fraud, if the defrauded party remains in possession of the land received by him in exchange, and endeavors to dispose of it, and exercises full and complete ownership over it. That was held in view of the facts in the case which indicated that the plaintiff, after discovering the fraud, had collected the proceeds of a lease on the property, and had tried to sell the land. The present case is not such a case. Mrs. Peterson did not exercise rights of ownership over the land or attempt to sell it, nor did she sell it to Mrs. Hart. What she did was to assign to Mrs. Hart all her rights under her contract.

We find no error. The decree is affirmed.