### ELLISON & CO. v. JOHNSON & CO.

DAMAGES—CONTRACTS.—The measure of damages in a case of failure of consideration in defective quality of goods is the difference in value between the article sold and the article delivered at the time and place of delivery, and the question is not effected by the fact that the buyer has sold the goods at an advanced price. Difference between action for rescission of contract, and defense for failure of consideration stated.

*Kauffman* v. *Stuckey*, 37 S. C., 7; 40 S. C., 110, and *Fewell* v. *Deane*, 43 S. C., 257, *distinguished from this case.*

Before GARY, J., Abbeville, February, 1905.    Reversed.

Action by W. M. Ellison & Co. against J. T. Johnson & Co. From judgment for plaintiff, defendant appeals.

*Mr. Wm. P. Greene,* for appellant, cites: 2 Rich., 48; 24 Ency., 1157; 58 Am. St. R., 313; 32 S. E. R., 683, 718; 78 S. C., 18; 139 U. S., 199.

*Mr. Wm. N. Graydon,* contra, cites: 43 S. C., 257; 37 S. C., 8, 110.

April 16, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. The complaint in this case was for the price of a lot of flour sold and delivered by plaintiffs to defendants, and the main defense in the answer was damages for breach of warranty as to the quality of the flour. The trial resulted in a verdict and judgment for plaintiff for $385, the sum demanded.

The crucial question presented by defendants' exceptions is, whether the Circuit Court correctly instructed the jury as to the rule or measure of damages applicable to the defense set up by defendants. The Court charged in substance that if the defendants sold the flour for more than they had paid for it, they were not damaged and could not recover damages and have abatement in the price for any defect in the quality of the flour. Under this instruction the jury could not do otherwise than bring in a verdict for plaintiff, as defendants admitted that they had sold the flour at a profit of about twenty-five cents per barrel.

The testimony in behalf of the defendants tended to show that in December, 1903, defendants purchased of plaintiffs four hundred barrels of flour, manufactured by Ballard & Ballard Co., consisting of three brands, Obelisk, Bicycle and Waterloo, of standard quality, such as defendants had previously used in their business as merchants, to be shipped, and at prices, as follows: 100 barrels on January 1, 1904, and 100 barrels on January 15, 1904, Obelisk at $5, Bicycle at $4.45 and Waterloo at $4.15 per barrel; 100 barrels on February 15, 1904, and 100 barrels on March 15, 1904, at an advance of five cents per barrel. The quantity of flour

was delivered as contracted for. The first and second shipments were paid for by defendants without any question being made as to quality. When draft was made for the third shipment, defendants complained of the quality. Defendants' customers had been complaining of the flour and the testimony tended to show that the flour was dark and of poor cooking quality—in fact, the plaintiffs admitted that the flour was defective and were willing to allow some deduction. The defendant Brock testified that plaintiffs told him to go ahead and pay the draft for the third shipment and that his claim could be adjusted out of the fourth and last shipment. The present suit is for the price of the last shipment of 100 barrels, less freight. The testimony in behalf of defendants showed that immediately after the purchase in December, 1903, flour began to advance in price and continued to advance for some time, that by January 1, 1904, flour had advanced twenty or twenty-five cents per barrel, and by the time of the last shipment in March, 1904, flour had advanced seventy-five cents per barrel, and that by reason of this advance in price defendants were enabled to dispose of the flour at a profit of twenty-five cents per barrel, but that they lost the advance in the market price.

It is manifest that the loss claimed by defendants does not fall under the class of expected or anticipated profits that are contingent, speculative and remote and, therefore, not recoverable, as in *Sitton* v. *McDonald,* 25 S. C., 68. If it is proper to characterize the loss in this case as a loss of profits, it is a loss of *accrued and certain profits* sustained at the time and place of delivery of the respective shipments of flour. More accurately speaking, the question turns on the difference in the value of the article sold and the value of the article delivered at the time and place of delivery. If A. sells B. 400 bales of good middling cotton to be delivered at a specified time in the future at 11 cents per pound, does A. perform his contract by delivering 400 bales of stains simply because stains happen to be worth 11 cents at the time of delivery? It is too clear for argument that B.'s

loss by reason of A.'s non-performance of contract is the difference in value between cotton graded "good middling" and cotton graded "stains" at the time and place of delivery. It is impossible by illustration to make the case plainer. The defendants bought good flour of a particular brand and standard and reasonably suffered loss by a delivery of an inferior grade of flour. The question is not affected bv the price defendants may have obtained for the flour, except that evidence of the price obtained by them may aid in establishing the value of the articles at the time of delivery as compared with what would have been the value if they had been as warranted. The converse of the proposition is illustrated in *Huguenot Mills* v. *Jempson & Co.,* 68 S. C., 363, 47 S. E., 687, wherein the seller of goods by executory contract to be delivered at a future time may recover, for breach of contract by the buyer refusing to receive the goods, the difference between the contract price and the market price at the time the buyer refuses to accept. In that case the price of the goods had gone down. The authorities generally agree that the measure of damages in a case of this kind is the difference in value between the article sold and the article delivered at the time and place of delivery, and that the question is not affected by the fact that the buyer has sold the property at an increased price. 2 Sutherland on Damages, 422; 2 Sedgwick on Damages, 474, 475; *Brown* v. *Bigelow,* 10 Allen, 242; *Bushman* v. *Taylor,* 2 Ind. App., 12, 50 Am. St. Rep., 228; *Berry* v. *Shannon,* 98 Ga., 459, 58 Am. St. Rep., 314, 25 S. E., 514. The case falls within the principle of *Hadley* v. *Baxendale,* 9 Exch., 341, often cited and approved in this State, "that damages which may fairly and reasonably be considered as naturally arising from a breach of contract according to the usual course of things are recoverable." Losses following the fluctuations of the market must be regarded as within the contemplation of the parties as matters of damages in contracts for sale of marketable articles. The element of certainty is attained when the loss is adjusted by ascertain-

ing the difference in value *between the thing delivered* and *the thing agreed to be delivered* at the time and place of delivery.

The Circuit Judge in charging the jury misconceived the effect of the cases of *Kauffman* v. *Stuckey,* 37 S. C., 7, 16 S. E., 192, 40 S. C., 110, 18 S. E., 218, and *Fewell* v. *Deane,* 43 S. C., 257, 21 S. E., 1. In so far as the Kauffman case related to the question involved in this case, partial failure of consideration, it is in accord with the view we have announced, for this Court approved the charge to the jury that in case of a partial failure of consideration in the quality of the flour, the defendant was entitled to recover or have abatement to the extent the flour failed to come up to the sample. The fact that the buyer sells the articles without loss or at a profit becomes very material when the case presented is one of rescission of contract. The cases cited show that when the action or defense is based upon a rescission of the contract for a total failure of consideration, the buyer must account for whatever he obtained for alleged worthless articles. In such a case, of course if the buyer has sold the alleged worthless articles at a profit, he has sustained no damage. An action or defense based upon the rescission of a contract proceeds upon the theory that the title of the goods revests in the seller, and so the buyer who has sold them in whole or in part must account to the owner, whereas, an action or defense based upon a partial failure of consideration leaves the title of the goods in the buyer and what he gets for his own property (except as evidence of value) is not a vital matter in determining whether the seller has performed his contract and what he must render to the buyer as an equivalent for non-performance.

These views must result in a new trial for misdirection of the jury. We do not deem it important to consider further the exceptions of the defendant.

The plaintiff demurred to an answer for insufficiency at a former term, when the case was called before special Judge Ernest Moore, and Judge Moore overruled the demurrer on

the ground that defendants, on the facts stated in the answer, "were entitled to credit or damages to the extent that the flour shipped failed to come up to standard of that contracted for at the time of the delivery." Judge Moore's ruling was in strict accord with the views herein announced and plaintiffs' exceptions thereto cannot be sustained.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.