Argued June 2, decided July 14, rehearing denied August 18, 1908.

## McMILLAN *v.* BATTEN.

[96 Pac. 675.]

CORPORATIONS—STOCK—SALES—CONTRACT—CONSTRUCTION—OPTION.

1. A contract declared an agreement by plaintiff to sell to defendants twenty shares of certain stock, as an entirety, for $2,500, ten shares to be delivered and paid for immediately, and ten shares to be delivered to a bank and paid for within thirty days. The contract also recited that it was mutually understood that dividends on the latter shares should go to the purchasers with the original ten shares, and as a part thereof, and that the parties agreed to carry out the provisions of the contract on their respective parts to be performed. *Held* not a mere option on defendants' part to purchase the deposited shares, but a mutual contract of sale thereof, which became executed on plaintiffs' part on their delivering such shares to the bank.

SAME—CONDITIONS—COVENANTS—BREACH—EFFECT.

2. Where, in a contract for the sale of corporate stock, the sellers agreed that they would not engage in the general merchandise business in a city

named or within twenty miles thereof within twelve months, that they would not do or suffer anything to be done or said adversely affecting the business of the corporation, but would aid the purchasers in advice or explanation concerning the business when requested, and promote the general welfare of the company, such stipulations were not conditions precedent, the performance of which the sellers were bound to prove to entitle them to recover the purchase money of the stock, but were at most covenants, a breach of which would constitute no defense to such action, but only conferred on the buyers a right of action for damages.

SAME—ACTIONS—PLEADING—DEFENSES—FALSE REPRESENTATIONS.

3. A defense to an action for the purchase price of corporate stock, that the sale was induced by plaintiffs' fraudulent representations, only alleging that the representations were false, was insufficient, without a further allegation of fact showing in what respect or to what extent they were false.

SAME—EXECUTED CONTRACT.

4. Where a contract for the sale of corporate stock, for the price of which the action was brought, was executed on the sellers' part, the defense of fraud and deceit in the sale was not available as a bar, unless a rescission of the contract was pleaded, or an entire failure of consideration was shown.

SAME—STOCK—SALES—RESCISSION FOR FRAUDULENT REPRESENTATIONS
    —RECOVERY OF PRICE PAID.

5. Purchasers of corporate stock, when sued for the price, were not entitled by way of counterclaim to recover the price paid for a portion of the stock because of alleged fraudulent representations as to the condition of the corporation, where it was shown that on the next day after purchasing the shares defendants sold and transferred them to a stranger for the same amount they had paid for the stock, unaccompanied by any evidence of an obligation on their part to take back the stock, or make good what they had received therefor, they having induced the latter to indorse the stock so that they might make good their pleaded offer to return possession thereof.

SAME—SALES—RESCISSION—FRAUD.

6. Evidence that defendants, soon after having made the purchase which they claim a right to rescind for the sellers' fraud, sold the property to others for the same amount paid, destroys any inference of damages, unless it is averred and shown that defendants were engaged in the business of buying and selling for profit, and bought for that purpose.

From Multnomah: ARTHUR L. FRAZER, Judge.

Statement by MR. COMMISSIONER SLATER.

This action was brought to recover $1,250—the agreed purchase price of 10 shares of stock of the Bend Mercantile Company, a corporation engaged in a general merchandise business at the town of Bend, in Crook County, which stock, it is alleged, was sold to the defendants on January 12, 1906. Defendants were at the time the principal stockholders and officers of the corporation, while plaintiffs were the active managers of its store to the extent of buying and selling goods. The action

is based on a written agreement, which is attached to the complaint as an exhibit. It is signed by the parties, and is to the general effect that plaintiffs agreed to sell 20 shares of the stock, all they owned, for the sum of $2,500, payable one half in cash on the execution of the agreement and the delivery of 10 shares, the remaining 10 shares to be delivered on or before 30 days, when payment of the balance of the purchase price was to be made. By a subsequent provision, however, this latter stock pending the delivery thereof and payment of the $1,250 was to be indorsed by plaintiffs, delivered to and held subject to this agreement by the Central Oregon Banking & Trust Company, which conducted a banking business in the city of Bend. All the stock was to be transferred and delivered free from any lien or adverse claim. The defendants were therein designated as purchasers, and by express words each of the parties thereto "agreed to carry out the provisions hereof on their respective parts to be performed." There is also another clause to the effect that plaintiffs agree to resign immediately from the management, to aid the purchasers in advice or explanation about the business when requested, to promote the general welfare of the company, not to engage in the general merchandise business in the city of Bend, or within a radius of 20 miles thereof, excepting in the town of Laidlaw, within 12 months from that date, and not to do or suffer anything to be done or said, now or hereafter, adversely affecting or prejudicial to the business of the company. The performance by plaintiffs of all of the terms of the contract, the delivery to defendants of the first 10 shares and the receipt by plaintiffs of $1,250, the purchase price, are alleged, and, also, that they indorsed and delivered the remaining 10 shares to the said bank on January 12, 1906, in accordance with the terms of the original agreement and the terms of a joint memorandum of the same date, signed by both parties and addressed to the bank,

directing it to hold the same and the original agreement subject to the terms thereof; that defendants have failed and refused to pay for the stock, although requested to do so, and judgment is demanded for the amount of the agreed price with interest from February 13, 1906.

Defendants answered jointly, setting up three affirmative defenses, to which plaintiffs replied putting the case at issue. During the trial, however, to supply some deficiencies in the form of their answer, defendants obtained leave to file an amended answer, which it was ordered should be deemed as replied to by plaintiffs to the same effect as their original reply, with the additional allegation, that defendants immediately, on purchase of the first 10 shares, sold and transferred the same to another for the same price. The amended answer contains some attempted specific denials which are now confessed to be insufficient to raise any issue; but following these, and after a specific admission of the purchase and payment by defendants of the agreed price for 10 shares of stock, there is interposed a general denial of each and every other allegation of the amended complaint not specifically admitted. The three affirmative defenses are (1) fraud and deceit practiced by plaintiffs in bar of the action; (2) breach of contract by plaintiffs; and (3) counterclaim to recover the money paid for the ten shares taken, on the ground of alleged fraud and deceit, and because of which defendants, upon the discovery thereof, offered to return the stock. The new matter of the amended answer being considered as denied, the trial proceeded. On objections by plaintiffs to defendants' proffered testimony, tending to support the first and second affirmative defenses, the court held that the said defenses were not sufficient to bar a recovery, excluded the testimony as to those defenses, but admitted it as to the third defense or counterclaim, and thereupon declared that he should instruct the jury to bring a verdict on plaintiffs' claim for the $1,250 remaining unpaid. But

later on in the trial, defendant Drake testified to the effect that on the next day after defendants purchased and paid $1,250 for the first 10 shares, they sold and transferred the same on the books of the company to one Crocker, for the same amount, who still owned said stock, but that, at defendants' request, Crocker had indorsed his certificate for the same and placed it in court as a tender to plaintiffs, and also to the effect that the recovery was ·for Crocker's benefit, thereupon the court, *sua sponte* and over defendants' objections, stopped the further offer of testimony, and directed a verdict for plaintiffs in the amount demanded, to which defendants excepted. Afterwards judgment was entered thereon, from which defendants have appealed.        Affirmed.

For appellant there was a brief over the names of *Messrs. Wilson & Neal, Mr. M. R. Elliott,* and *Mr. W. E. Huerin, Jr.,* with an oral argument by *Mr. A. King Wilson.*

For respondent there was a brief over the names of *Mr. William A. Bell and Mr. John H. Hall,* with an oral argument by *Mr. Hall.*

Opinion by Mr. Commissioner Slater.

To reverse the judgment defendants contend, first, that plaintiffs failed to make a case sufficient to support a verdict, and this is based on the claim (1) that the written instrument sued upon as a contract contains no binding obligation on defendants to take and pay for the remaining ten shares of stock, but they say it amounts only to an option on their part, to purchase; and (2) that there was a failure of proof of performance by plaintiff of all the obligations of the contract on their part.

1. The first position is not tenable. While the written instrument does not contain in explicit language an agreement by defendants to purchase, yet, when construing the whole instrument, the obligation is plainly deducible therefrom. It was prepared and drawn by the defendants

in the absence of the plaintiffs, who, at the former's request, afterwards signed it with defendants in the evident belief that mutuality of obligation was expressed therein. By its terms several things are to be done by plaintiffs as sellers, and other things are to be done by the purchasers. It declares an agreement by plaintiffs to sell to the defendants, who are thereinafter termed purchasers, 20 shares of stock as an entirety for $2,500. Ten shares are to be delivered and paid for immediately, and 10 shares to be delivered to a third party and to be paid for within 30 days; and "it is mutually understood that" dividends on these latter shares should go to "said purchasers with the original ten shares and as a part thereof." Finally, the respective parties "agree to carry out the provisions hereof on their respective parts to be performed." No other conclusion can be reasonably derived from such provisions but that defendants were agreeing to be purchasers. If there was an agreement on their part to take and pay for the first 10 shares as their conduct by accepting thereof plainly implies, then there must also have been an obligation to take and pay for the second 10 shares. The agreement is to sell 20 shares, and is entire and not severable. Moreover, as to the plaintiffs, it is an executed, and not an executory contract. Delivery was at the time made to a third party —a bank—selected by defendants, to receive the possession of the certificate evidencing the ownership of the stock, and indorsed by plaintiffs. The defendant Drake was vice president of the depositary bank, and transacts his business there. No further delivery could possibly be made by plaintiffs. Everything required and necessary to be done by them to transfer the title and possession has been done, and nothing remains to be done but to receive payment from defendants.

2. Defendants' second contention, that the general averment of performance of the contract by plaintiffs was denied, and that there was a failure of proof on their

part to establish that they had observed and performed the covenants of the said agreement, to the effect that they would not engage in the general merchandise business in the city of Bend, or within a radius of 20 miles thereof within 12 months, that they will not do or suffer anything to be done or said, now or hereafter, adversely affecting or prejudicial . to the business of the Bend Mercantile Company, and to aid the purchasers in advice or explanation about the business when requested, and to promote the general welfare of the company. But none of these terms are conditions precedent, the performance of which by plaintiffs must be shown to entitle them to demand and receive payment for the stock. Nor would a breach of such covenants, if shown, be a bar to plaintiffs' recovery, but only confers a right of action for the breach. Clark, Contracts (2d ed.), 450; *Krebs Hop Co.* v. *Livesley,* 51 Or. 527 (92 Pac. 1084).

3. We come now to defendants' third and principal contention, that they had presented or offered to present sufficient testimony in support of their affirmative defenses to make a *prima facie* case, and require the case to go to the jury. The first defense was fraud and deceit in bar of the action. It is alleged that certain representations were made by plaintiffs as an inducement for defendants to purchase, that they were false, and that defendants relied upon them not knowing them to be false; but it is not alleged in what respect or to what extent they were false. In a defense upon the ground of fraudulent representations, it is not sufficient to aver that the representations were false, but the pleader must show wherein they were false.

4. In such cases, facts, not conclusions, must be alleged (*Specht* v. *Allen,* 12 Or. 117: 6 Pac. 494) ; and, where the contract is an executed one, the defense of fraud and deceit to an action for the price is not available as a bar to the action, except only where rescission is plead or an entire failure of consideration is shown. 24 Am. & Eng. Enc. Law (2 ed.) 1160.

5. The second defense was to the effect that plaintiffs had committed a breach of certain independent covenants of the agreement which we have already referred to and discussed and determined not to be a bar to the action. The third defense was by way of counterclaim, seeking to recover from plaintiffs on the ground of fraud and deceit the price paid .for the first 10 shares of stock received by them. The fraudulent representations alleged to have been made by plaintiffs and relied upon by the defendants are the same matters set up in the first defense, but they are more precisely and accurately plead. They refer generally to the prosperous condition of the company, and as to what was the book value of the stock as shown by the books of the Bend Mercantile Company, which, it is alleged, was represented by plaintiffs to be $165 per share, but it is alleged, in fact, that it was of no value. Conceding that these representations were material and of such character that defendants were entitled to rely upon them, of which we have much doubt, it being admitted that defendants were at the time owners of other stock in the same corporation and were its officers, yet we are of the opinion that whatever right to recover they might have otherwise possessed, they effectually destroyed that right when one of them testified on cross-examination, to the effect that on the next day after purchasing and paying for the first 10 shares, they sold and transferred the title to the same on the books of the company to one Crocker, for the same amount they had paid for it, and that they had induced Crocker to indorse it and tender it into court for the benefit of plaintiffs, so that these defendants might make good their offer to return the possession of the stock. This was not accompanied by any evidence that defendants had been obliged by any contract of warranty with Crocker, to take back the stock and to make good to him what they had received for it, nor was there any averment in the answer to that effect; but, as it appeared

to the trial court, it was an attempted rescission by defendants of the contract with plaintiffs and a recovery from them for the sole benefit of a stranger.

6. Rescission for fraud and deceit is based upon the theory of a total or partial failure of consideration and because of the fraud, resulting in damage to the party defrauded, but evidence that defendants soon after having made the purchase sold the property to others for the same amount paid by them destroys any inference of damage, unless perhaps, it is averred and shown that the purchaser was engaged in the business of buying and selling for profit and bought for that purpose. Counsel for defendants site the case of *Ellison* v. *Johnson*, 74 S. C. 202 (54 S. E. 202: 5 L. R. A. (N. S.) 1151), to the effect that, in an action for the price of goods sold where the main defense was damages for breach of warranty as to the quality of the article sold, the measure of damages is the difference in value between the article sold and the article delivered at the time and place of delivery, and that the question is not affected by the fact that the buyer has sold the property at an increased price. But that case is not like the one now under consideration in two important respects. Breach of a warranty of quality is not involved here, nor is the defense a recoupment of damages for fraud or deceit. No damages are asked, but a recovery of the purchase price in assumpsit is demanded based on rescission for fraud and deceit. After setting up the facts constituting an alleged fraudulent sale and a tender back of the stock, defendants allege that by reason thereof, plaintiffs became indebted to defendants in the amount of $1,250, the purchase price paid. In *Ellison* v. *Johnson*, 74 S. C. 202 (54 S. E. 202: 5 L. R. A. (N. S.) 1151), the learned court goes to some trouble to distinguish such a case as is attempted to be made here from the one there considered. Mr. Justice Jones there says: "The fact that the buyer sells the articles without loss, or at a profit, becomes very material

when the case presented is one of rescission of contract. The cases cited show that, when the action or defense is based upon a rescission of the contract for a total failure of consideration, the buyer must account for whatever he obtained for alleged worthless articles. In such a case, of course, if the buyer has sold the alleged worthless articles at a profit, he has sustained no damage. An action or defense based upon the rescission of a contract, proceeds upon the theory that the title of the goods revests in the seller, and so the buyer who has sold them in whole or in part must account to the owner, whereas, an action or defense based upon a partial consideration leaves the title of the goods in the buyer, and what he gets for his own property (except as evidence of value), is not a vital matter in determining whether the seller has performed his contract and what he must render to the buyer as an equivalent for nonperformance."

From these considerations, it follows that the judgment should be affirmed.                                 AFFIRMED.