## 11425

### MAULDIN *ET AL.* v. MILFORD

### (121 S. E., 547)

1. SALES—SALE FOR FAIR PRICE IMPLIES WARRANTY OF TITLE.—The sale of a chattel in possession for a fair price implies a warranty of title, unless it is shown that the seller did not intend to assert ownership, but only to transfer such interest as he might have in the chattel.

2. EXCHANGE OF PROPERTY—WARRANTY OF TITLE IMPLIED.—An exchange of property is merely a double sale, and warranty of title is implied, unless there is something in the facts of the particular case to exclude the presumption of warranty.

3. SALES—EXTENT OF SELLER'S IMPLIED WARRANTY OF TITLE STATED.—Seller's implied warranty of title is not confined to his right to sell, but is a warranty that his title is perfect and free from all liens and incumbrances.

4. SALES—BURDEN OF REBUTTING IMPLICATION ON PARTY DENYING WARRANTY OF TITLE.—The implication or presumption of warranty of title arises on proof of a sale of a chattel, and when the sale has been shown the burden is upon the party denying the warranty and resisting a recovery growing out of it, to rebut the implication.

5. SALES—NO BREACH OF WARRANTY UNTIL POSSESSION IS DISTURBED.—As between seller and his immediate buyer there is no breach of warranty of title until buyer's possession is disturbed by the assertion of a paramount title on the part of the true owner.

6. SALES—BREACH OF WARRANTY SHOWN WHERE BUYER COMPELLED TO DISCHARGE INCUMBRANCE.—Where buyer is compelled to pay to discharge an incumbrance in order to retain the property, a breach of warranty is shown.

7. SALES—MEASURE OF DAMAGES FOR BREACH OF WARRANTY OF TITLE STATED.—The measure of damages for breach of warranty of title is the price paid for the property with interest from the date of purchase, and, in a proper case, the expenses reasonably incurred in attempting to defend the title.

8. SALES—WARRANTY OF TITLE DOES NOT RUN WITH PROPERTY.—The warranty of title of personal property does not run with the property, and a subsequent sale of the property by buyer does not operate to vest in a subsequent buyer any right of action which the former might have against the original seller for breach of the warranty.

9. SALES—LIMITATION ON RULE THAT WARRANTY OF TITLE DOES NOT RUN WITH PROPERTY.—The rule that warranty of title does not run

with the property does not extend to cases where there has been a novation of the contract of warranty, or where the liability of original seller, such as the manufacturer of food products, articles inherently noxious or dangerous, etc., rests essentially upon the doctrine of negligence.

10. SALES—RESALE HELD NOT TO DIVEST BUYER OF RIGHT OF ACTION FOR BREACH OF WARRANTY.—A buyer is not divested of his right of action for breach of warranty of title by a resale of the property.

11. FRAUD—DEFRAUDED BUYER HAS OPTION TO SUE IN CONTRACT OR IN TORT.—Where the warranty is false and fraudulent, buyer has the option to sue in contract for breach of warranty or in tort for deceit.

12. PLEADING—IN ABSENCE OF ELECTION, DEFRAUDED BUYER'S COMPLAINT PRESUMED TO STATE ACTION EX CONTRACTU.—Where defrauded buyer's complaint contains allegations appropriate to an action on a contract, and also to an action in tort, and such allegations are not separately stated as distinct causes of action, in the absence of an election by plaintiff every intendment is in favor of regarding the action *ex contractu.*

13. SALES—BUYER'S COMPLAINT HELD TO STATE ACTION FOR BREACH OF WARRANTY OF TITLE.—Buyer's complaint alleging that chattel was sold by defendant under representations that it was free of incumbrances, that there was an outstanding mortgage thereon under which possession of the property was subsequently recovered from a subpurchaser by mortgagee, and damages were sustained by plaintiff, *held* to state a cause of action for breach of warranty of title.

14. PLEADING—DEMURRER TO COMPLAINT STATING CAUSE OF ACTION AS TO ONE PLAINTIFF NOT SUSTAINED.—Where the complaint as to two of the plaintiffs stated no cause of action, but did state a cause of action as to another plaintiff, a demurrer to the complaint as a whole will not be sustained.

15. APPEAL AND ERROR—PERMITTING JOINDER AND INTRODUCTION OF TESTIMONY OF PLAINTIFFS HAVING NO CAUSE OF ACTION HELD PREJUDICIAL ERROR.—Where the complaint stated a cause of action as to only one of three plaintiffs, an order authorizing their joinder and permitting at the trial the introduction of testimony of a combination of their grievances in connection with the cause of action *held* prejudicial error.

16. CHATTEL MORTGAGES—MORTGAGEE CONSENTING TO SALE WAIVES LIEN.—Where a mortgagee expressly or impliedly consents to a sale of the mortgaged property, he waives his lien, and buyer takes title free from the lien of the mortgage.

17. SALE—IN BUYER'S ACTION FOR BREACH OF WARRANTY OF TITLE, THAT
MORTGAGEE RELEASED MORTGAGE HELD DEFENSE SUBJECT TO STATED
LIMITATION.—If buyer resells property and is sued for breach of
warranty of title by reason of an outstanding mortgage, proof
that the mortgage was released and a title free from the lien was
acquired and transferred by him would constitute a complete de-
fense, subject to the limitation that, if seller is notified by his
immediate buyer of a suit against the latter by one claiming the
property under a mortgage against which the seller warranted, and
is requested and given reasonable opportunity to defend that suit,
whether he defends or refuses to defend, a judgment therein 'will
be conclusive against seller in a subsequent action by a buyer who
has been judicially evicted.

18. ESTOPPEL—SELLER WARRANTING TITLE ESTOPPED TO CLAIM THAT
ADVERSE MORTGAGE CLAIM WAS INVALID.—Whether seller has received
formal notice of a suit against his immediate buyer or a subbuyer
by reason of an alleged outstanding mortgage and has been called
upon to defend or not, when advised of the pendency of suit against
which he warranted, seller is bound to inform defendant therein of
any release rendering claim under the mortgage invalid; and he
may not, in such circumstances, actively assist by word or deed in
the assertion by the adverse claimant of a title under a mortgage
against which he as seller warranted, and afterwards successfully
defend an action against himself for breach of warranty of title
upon the ground that the adverse mortgage claim was invalid.

19. SALES—CREDENCE TO BE ATTACHED TO TESTIMONY AS TO KIND OF TITLE
TRANSFERRED HELD FOR JURY.—In an action for breach of warranty
of title, the degree of credence to be attached to testimony tending
to establish that seller transferred an unincumbered title *held* for
the jury.

20. SALES—IN ACTION FOR BREACH OF WARRANTY, NO DEFENSE THAT
BUYER HAS NOT·PAID MONEY TO SUBBUYER.—In an action for breach
of warranty of title, buyer may recover without showing that he
has actually paid to subbuyer any money on account of his liability
as warrantor, and a showing that he has assumed payment is suffi-
cient.

21. SALES—IN ACTION FOR BREACH OF WARRANTY, NO DEFENSE THAT
GOODS WERE SOLD BEFORE MORTGAGE MATURED.—As respects liability
for breach of warranty of title by reason of outstanding mortgage,
*held*, that it was it was immaterial whether the property was sold
prior to the maturity of a mortgage thereon and before condition
broken.

Before WILSON, J., Anderson, 1922.   Reversed and re-
manded.

Action by W. D. Mauldin, George Shelor and W. J. Edwards against Galoway Milford. Judgment for plaintiffs, and defendant appeals.

The following is the preliminary statement of the case:

The plaintiff, Mauldin, alone first brought action against the defendant, Milford, alleging in his complaint the same facts contained in the complaint set out below. To this complaint the defendant demurred upon the ground that it did not state facts sufficient to constitute a cause of action, in that it did "not show that any money or moneys have been paid out by the plaintiff, Mauldin, on account of an alleged breach of warranty or seizure of the automobile "

Thereupon, on motion of plaintiff's attorney, Special Judge Hon. C. C. Simms, passed an order "that the plaintiff leave to amend the summons and complaint in the case by making parties plaintiff or defendant, as he may be advised, all those parties who in the chain of transfers of the automobile, alleged to have been under mortgage, had possession of same as owner thereof, and that such amended summons and complaint be served upon defendant's attorney," etc.

Pursuant to this order, George Shelor and W. J. Edwards were then joined as parties plaintiff, and the summons and complaint amended accordingly. The complaint as thus amended is as follows: "That on or about the —— day of July, 1920, defendant, Galoway Milford, traded to plaintiff, W. D. Mauldin, a Buick automobile, representing the same to be free of incumbrances, and in exchange received valuable property from said W. D. Mauldin; that said W. D. Mauldin later traded said Buick automobile to George Shelor, and George Shelor traded said car to the plaintiff, W. J. Edwards; that all of plaintiffs traded for said car in good faith and for value, believing the said car to be free of incumbrances, but the owner and holder of a mortgage on said car, of which mortgage the defendant well knew, brought an action in this Court for the possession of said Buick automobile against the plaintiff, Edwards, and using

defendant as a material witness, the mortgagee prevailed in the action and recovered said car; that plaintiff, Edwards, having lost the car by process of law, called upon plaintiff, George Shelor, upon his warranty, and the plaintiff, Shelor, recognized his liability, and acknowledged same, and, in turn, called upon the plaintiff, Mauldin, who had traded said car to him. The plaintiff, Mauldin, well knowing that, regardless of notice, he was liable on his warranty, acknowledged his liability to plaintiff, Shelor, and, in turn, called upon the defendant to make good on his warranty; that defendant, Milford admitted that he knew the car was not paid for, and, without any claim that any of plaintiffs had assumed to pay the debt, refused to acknowledge his liability or make any effort whatsoever to adjust the matter, or save harmless his vendee or those claiming through him; that defendant is liable for the value of the car traded by him which plaintiff alleges to be $300.00, and by reason of defendant's unlawful act in disposing of property under mortgage, and by his breach of contract, he has damaged plaintiff in the sum of $200.00 actual and punitive damages. Wherefore, plaintiffs pray that they have judgment against the defendant for the sum of $500.00, and for such other and further relief as may be just and proper."

To this amended complaint the defendant demurred upon the following grounds: "(1) There is no privity between this defendant and the plaintiffs jointly, or jointly and severally. (2) If there be a cause of action against this defendant in favor of any one of the plaintiffs, it is several, and they are before the Court improperly. (3) That W. D. Mauldin and George Shelor have not sustained any loss, and their acknowledgment of such loss is not sufficient, and they are improperly before this Court." The demurrer was overruled by the presiding Judge, Hon. John S. Wilson.

The defendant's answer alleged in substance: (1) A general denial. (2) That defendant was a purchaser for value without notice of an existing lien. (3) That the au-

tomobile was sold by the mortgagor to defendant under the authority of the mortgagee. (4) That the mortgagor was acting as agent of the mortgagee in the sale of the car. (5) That mortgagee knew of the sale to defendant, and was estopped by his conduct to claim the property in the hands of this defendant or any other person.

The case went to trial upon the pleadings.

The evidence for the plaintiff was in substance as follows: The plaintiff, Edwards, testified that he bought the automobile in question from George Shelor; that the estate of J. L. Tate brought suit against him and recovered the car; that in that suit the defendant, Milford, was a witness for the Tate estate; and that the chattel mortgage on the car, containing the usual provision as to seizure and sale after conditions broken, was given by one Charley Jones under date of November 24, 1919, to become due on November 1. 1920. The plaintiff, Shelor, testified, in substance, that he sold the automobile to Edwards; and that he had acquired the car in a trade from Mauldin; that he and Mauldin had an interview with Milford after they learned of the mortgage; that Milford admitted he knew there was a mortgage on the car, but would make no settlement with them; that he, Shelor, had been damaged $550.00; that he was liable to Edwards for that amount; that he thought he had paid Edwards $300.00. The plaintiff, Mauldin, did not testify.

The defendant moved for nonsuit substantially upon the grounds: (1) That there was no evidence tending to establish that when Milford sold the car any condition of the mortgage had been broken; and (2) that there was no evidence tending to establish any injury sustained by the "immediate purchaser" from Milford. The motion was overruled.

The defendant then adduced evidence tending to establish that he acquired the automobile from Charley Jones on July 12, 1920; that Jones represented to him that he owed Mr. Tate a little on the purchase of the automobile, but there was no mortgage on it, and that Mr. Tate had authorized him

(Jones) to sell or trade the car; that defendant traded the car to W. D. Mauldin about August 15, 1920; that he would not have traded with Jones for the car if he had known there was a mortgage on it.

Defendant moved for a directed verdict upon the grounds that it appeared from the uncontradicted testimony (1) that the defendant had acquired and disposed of the automobile before any condition of the mortgage had been broken, and (2) that the mortgagor, Jones, from whom he purchased, had the mortgagee's authority to sell and convey to him a title free from the lien of the mortgage. The motion was refused.

The presiding Judge charged the jury as follows: "Mr. Foreman and Gentlemen, this is a suit of Mauldin, Shelor, and Edwards against the defendant, Milford. The complaint is not very long, and to refresh your memory I will read it. (The Court reads complaint.) Now the defendant, Milford, denies each and every allegation and puts the plaintiff on proof. (The Court reads answer.) Now, gentlemen, in dealing with personal property, if a man allows another to handle his property as if it was his own and hold out to the world that it is his own, innocent parties have a right to assume that he is the owner of the property, ordinarily; but if a man puts his mortgage, if he has a claim on that property, puts his mortgage on record, if he does that, he is protected, even if another party has the property in charge. If he doesn't do that, doesn't put his mortgage, or bill of sale as it is sometimes called, on record, and allows another man to use the property as if it was his own for some reasonable time, then the parties who know nothing about this mortgage have a right to assume that the party in possession of the personal property is the owner of the same. If it is on record it is his business to go and see. But there may be circumstances that would put him on notice anyway, even if a mortgagee hasn't got his claim on record. Sometimes people take a claim and don't record it. And if

a third party, if the facts are such as to put him on notice that there is a claim over the property, such notice in the opinion of the jury that an ordinarily prudent man should act on, if circumstances are such as that, then it would be as good as a notice. Because, whether a mortgage is recorded or not, if you have got notice, or if the circumstances are such that in the opinion of the jury a person of ordinary prudence and judgment should have notice, why, then, the purpose of recording is answered, don't you see, to put third parties on notice; and then, if a man trades for property under these circumstances, he would be liable. Now, as to the facts in this case, it is a matter entirely of proof for you to go by. The plaintiffs must make out their case by the greater weight or preponderance of the evidence.

"Mr. Dagnall: Your Honor perhaps overlooked the question of punitive damages in here.

"The Court: Wait a minute. That's right. They claim actual damages $300.00, and punitive damages $200.00. So I will have to define to you what damages are. Damages is a sum of money assessed by the jury to give to a party claiming damages for the actual injury sustained, the actual injury. That's called actual damages. Punitive damages is an additional amount added to the actual damages, given by way of punishment against the party committing a wrong to teach him not to do that any more and to teach others not to do likewise in the future. As you have often heard it called—smart money. The teshnical term is punitive, vindictive, or exemplary damages. * * *

"Mr. Dagnall: One other proposition. Your Honor charged this perhaps, but I didn't quite catch it. We want you to charge the jury that every man that sells personal property warrants the title.

"The Court: A sound article demands a sound price. And when nothing is stated, if you ask a sound price for your article, an implied warranty is included. In other words, if there is a latent defect in your property, it is your

business to tell the purchaser if he can't see it by ordinary observation. No man is allowed in law, or morals, or anything else, to go and cheat a man. If you tell a man I have got a horse or something here to sell, he has got the thumps, he is bellowsed, but I like him for certain reasons, and I won't take less than so and so, if a man is fool enough to give you a sound price for him, that's his lookout. But, if there is a secret defect, and you say, I will sell you this horse for so and so, a sound price, and if it is a defect he can't detect, you must make it good. If there is a patent, open defect where anybody can see, then the purchaser buys at his own risk. That's about the law.

"Mr. Dagnall: That wasn't exactly on that point.

"The Court: I wish you gentlemen would frame your requests.

"Mr. Dagnall: If a man sells property on which there is a mortgage, he must make that mortgage good, because he sells it free of the lien.

"The Court: Unless he tells the party there is a lien on it; yes, sir; that's right.

"Mr. Harris: Your Honor, please, regarding the sound price and sound commodity, and ordinarily including a warranty, our Supreme Court has several times lately held that where there is a specific warranty that the implied warranty falls down, and you can't stand on that. And they claim here that there was a specific warranty, both in in their pleadings and in their testimony.

"The Court: I can't go into the facts, sir.

"Mr. Harris: I would like to have that charged, your Honor.

"The Court: Frame your charge.

"Mr. Harris: That the pleadings calling for, not an implied warranty, but a specific warranty, a given warranty, that they can't stand on an implied warranty, that they can only stand on one or the other. They can't have both an im-

plied warranty and a specific warranty, or a warranty stated. They can't have both of them.

"The Court: I think I have charged them fully along that line. Your verdict will be written on that paper. Retire, gentlemen."

*Mr. L. W. Harris,* for appellant, cites: *Mortgage due date:* 42 N. Y., 322. *Estoppel:* 98 S. E., 796. *Express warranty:* 115 S. E., 815; 109 S. E., 121; 109 S. E., 106.

*Mr. Leon L. Rice,* for respondent, cites: *Amendments in discretion of Court:* Code 1922, Sec. 436. *Passage of title before maturity carries no warranty:* 108 S. C., 361. *Liability is question for jury:* 111 S. C., 507. *Chattel mortgage is notice:* 100 S. C., 371.

February 12, 1924.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The defendant, Milford, by an exchange of property, acquired from one Charley Jones an automobile upon which there was an outstanding mortgage given by Jones to J. L. Tate. Before maturity of the mortgage debt, Milford sold or traded the car to the plaintiff, W. D. Mauldin. Thereafter Mauldin sold or traded the car to the plaintiff, George Shelor, who thereafter sold or traded the car for value to the plaintiff, W. J. Edwards. In the hands of Edwards, as the result of suit, possession of the property was recovered by the personal representative of J. L. Tate, holder of the chattel mortgage, which was outstanding when the defendant, Milford, acquired and disposed of the car. In that suit to dispossess Edwards, the defendant, Milford, was a witness for the Tate estate. The defendant adduced evidence in the present case, to the effect that he acquired and sold the car free from the lien of the Tate mortgage, in that the mortgagee had authorized the sale by the mortgagor. The only evidence bearing directly upon the value of the

car sold or the amount of damages sustained by any one as the result of the taking of the property under paramount title is the testimony of Shelor to the effect that he had been damaged $550.00, in that he was liable to Edwards, his immediate vendee, in that amount, and thought he had paid Edwards $300.00. There is no evidence that the defendant expressly warranted the title in selling to his immediate vendee, Mauldin, or that he made any representation as to title.

In that state of facts, what are the legal rights and remedies of the several parties? The record of the trial summarized in the preliminary statement, indicates that an attempt to answer the foregoing question in the form of a statement of more or less elementary general principles may not be regarded as a work of supererogation. While the appellant's exceptions, seven in number, are not properly framed, in that each contains more than one proposition of law or fact, in violation of Section 6, Rule 5, of this Court (*Cudd v. Moore* [S. C.], 119 S. E., 837), in the following discussion all points embraced in the exceptions which are deemed material to a determination of the appeal upon its merits will be disposed of.

The sale of a personal chattel in possession for a fair price implies an affirmation by the seller that the chattel is his, and, therefore, he warrants the title, unless it be shown by the facts and circumstances of the sale that the seller did not intend to assert ownership, but only to transfer such interest as he might have had in the chattel sold. *Benjamin on Sales* (2d Am. Ed.), § 639; 24 R. C. L., 182, § 454. *Moore v. Lanham,* 3 Hill, 304. *Furman v. Elmore,* 2 Nott & McC., 189, note. *Colcock v. Goode,* 3 McCord, 513 (dictum). *Computing Scales Co. v. Long,* 66 S. C., 379, 382; 44 S. E., 963; 65 L. R. A., 294. An exchange of property is merely a double sale and warranty of title is implied, unless there is something in the facts of the particular case to exclude the presumption of warranty.

*Rivers v. Grugett,* 1 McCord, 100; 24 R. C. L., 183, § 454; note 62 Am. Dec., 467.

"This implied warranty is not confined to the vendor's right to sell, but is, in substance, a warranty that his title is perfect, and free from all liens and incumbrances." *Sargent v. Currier,* 49 N. H., 310; 6 Am. Rep., 524. *Hodges v. Wilkinson,* 111 N. C., 56; 15 S. E., 941; 17 L. R. A., 545; 24 R. C. L., 230, § 504.

The implication or presumption of warranty of title arises on proof of any sale of a chattel, and when the sale has been shown the burden is upon the party denying the warranty and resisting a recovery growing out of it to rebut the implication *Hodges v. Wilkinson, supra.*

As between the seller and his immediate vendee the weight of authority is to the effect that there is no breach of the warranty of title until the possession of the purchaser is disturbed by the assertion of paramount title on the part of the true owner. 24 R. C. L., 231, § 506; notes, collating authorities, 35 Am. Dec., 607, and 16 Ann. Cas., 62, 63. But a breach of the warranty is sufficiently shown if a purchaser "is compelled to pay to discharge" an incumbrance in order to retain the property. 24 R. C. L., 231, § 504; 16 Ann. Cas., 63. *Close v. Crosland,* 47 Minn., 500; 50 N. W., 694.

A buyer having established a breach of his immediate vendor's warranty of title, the measure of damages is the price paid for the property, with interest from the date of purchase, and in a proper case the expenses reasonably incurred in attempting to defend his title. *Ware v. Weathnall,* 2 McCord, 413. *Glover v. Hutson,* 2 McMul, 109. *Computing Scales Co. v. Long,* 66 S. C., 382; 44 S. E., 963; 65 L. R. A., 294. *Smth v. Williams,* 117 Ga., 782; 45 S. E., 394; 97 Am. St. Rep., 220.

But the warranty of title of personal property does not run with the property. Such warranty "is personal to the purchaser of the property to whom the

warranty is made, and a subsequent sale of the property by such purchaser does not operate to vest in a subsequent purchaser any right of action which the former might have against the original seller for a breach of the warranty." 24 R. C. L., 159, § 432; note, 51 L. R. A. (N. S.), 1111, collating and reviewing the authorities. As was said by Mr. Justice Lamar in *Smith v. Williams,* 117 Ga., 782; 45 S. E., 394; 97 Am. St. Rep., 220:

"A warranty does not run with the article sold. If the title is not good, the vendee must look to him from whom he purchased, and to whom he paid the consideration. * * * The remedy of the subsequent purchaser is against his immediate seller, and not against the original owner."

The rule thus stated is obviously predicated upon the theory that there is no such privity, either of contract or estate, between the remote subpurchaser and the original seller as will support such a right of action. Its application, of course, is not to be extended to causes where there has been a novation of the contract of warranty, and where the liability of the original seller and warrantor, such as the manufacturer of food products, articles inherently noxious or dangerous, etc., rests essentially upon the doctrine of negligence. See 51 L. R. A. (N. S.), 1111; 19 L. R. A. (N. S.), 923.

In the case of *Davis v. Wilbourne,* 1 Hill, 27; 26 Am. Dec., 154, it was held that the doctrine of voucher, applicable to cases involving the warranty of the title to real estate, was so far applicable to "cases involving the rights of personal property" that if "one sued for a personal chattel" gives notice to "his warrantor" to come in and defend the action, such "notice to the warrantor" makes him a privy to the record, and he is bound by it to the extent to which his rights have been tried and adjudged. See *Middleton v. Thompson,* 1 Speers, 67, 69. *Allen v. Roundtree,* 1 Speers, 80. *Robertson v. Curlee,* 59 S. C., 458; 38 S. E., 116. And in the case of *Smith v.*

*Moore, 7* S. C., 209; 24 Am. Rep., 479 (Willard, A. J.) there is a dictum, apparently predicated upon the case of *Allen v. Roundtree, supra,* to the effect that a warranty of title to personal property affects all persons succeeding to the ownership under the principle of "privity of estate." But the effect of the rule as applied in *Davis v. Wilbourne* and in *Allen v. Roundtree* is merely to assign a certain artificial force by way of estoppel to the extension of a notice of the suit as between a seller or warrantor and his immediate buyer or warrantee. . Conceding that the warrantor so notified by his immediate vendee could extend the notice to his vendor or warrantor, and that the notice thus transmitted back to the original seller or warrantor would operate by way of estoppel to preclude him from disputing a breach of the warranty of title in the event the remote subpurchaser is dispossessed of the property under a claim of title against which the original seller warranted, it does not follow that there is any such "privity of estate" between the last buyer and the original seller as will support a right of action by the last or any intermediate buyer against the original seller. The rule of "notice" applied prior to the adoption of the present Code practice in cases involving title to personal property, does not, as we apprehend, require that conclusion. That a buyer is not divested of his right of action for a breach of his seller's warranty of quality by a resale of the property was expressly recognized in *Ellison v. Johnson, 74* S. C., 202; 54 S. E., 202; 5 L. R. A. (N. S.), 1151. If the cause of action for the breach of such a warranty remains in the buyer, and is not transferred by a resale to the subpurchaser, obviously the prior seller's liability by virtue of his warranty is to the immediate buyer, who retains the right of action thereon after a resale. See 24 R. C. L., 240, § 516. We conclude, therefore, that the proposition that a warranty of title of personal property does not run with the property, and that the right of action and the remedy of

a subsequent purchaser are against his immediate seller, is not in conflict with prior adjudications of this Court.

Underlying the foregoing propositions is the basic postulate that an action for breach of warranty sounds in contract. 24 R. C. L., 242, § 518. *Bryce v. Parker,* 11 S. C., 337. But, where the warranty is false and fraudulent, the buyer has the option to sue in contract for the breach of the warranty or in tort for the deceit. 35 Cyc., 363. *Bryce v. Parker, supra.* Where the complaint contains allegations appropriate to an action upon contract and also to an action in tort, and such allegations are not separately stated as distinct causes of action, certainly, in the absence of an election by plaintiff, "every intendment is in favor of regarding the action *ex contractu.*" *Randolph v. Walker,* 78 S. C., 157, 165; 59 S. E., 856.

Applying the foregoing principles to the case at bar, we think the complaint, liberally construed, states a cause of action in contract on behalf of the plaintiff, W. D. Mauldin, for a breach of warranty of title. There are allegations to the effect (1) that a personal chattel was sold by defendant to Mauldin under a representation that it was free of incumbrances; (2) that there was an outstanding mortgage thereon under which possession of the property was subsequently recovered from a subpurchaser by the mortgagee; and (3) that damages were sustained by the plaintiffs. The sale in itself carried the implied warranty of title which included the warranty against incumbrances. In the view that the representation that the property was free of incumbrances constituted an express or qualified warranty upon which Mauldin was bound to recover, if entitled to recover at all, the breach alleged was a breach of that warranty. The facts alleged as to dispossession by the holder of an outstanding mortgage were sufficient to establish a breach, and the general allegation of damage was a sufficient averment of injury. *Welborn v. Dixon,* 70 S. C., 108, 114; 49 S. E., 232; 3 Ann. Cas., 407. As to the plain-

tiff, Mauldin, therefore, a cause of action was stated, and there was no error in failing to sustain defendant's demurrer on that ground, to the original complaint. ·

But the amended complaint, in which Shelor and Edwards joined as parties plaintiff, stated no cause of action in favor of either Shelor or Edwards as against the defendant, Milford. In the view that such right of action would be assignable, there is no allegation that either of these parties had acquired by assignment from Mauldin his complete cause of action against Milford. See authorities collated, note 51 L. R. A. (N. S.), 1114. In so far as the complaint disclosed the facts, the plaintiff Edwards' right of action was against his coplaintiff, Shelor, and the plaintiff's, Shelor's, right of action was against his coplaintiff, Mauldin. After joinder of Shelor and Edwards, as plaintiffs, therefore, the complaint merely stated the cause of action alleged prior to their joinder, viz., a cause of action by Mauldin against the defendant, Milford. In that state of the case there was merely a misjoinder of parties plaintiff, not a "defect of parties" which would render the complaint demurrable on that ground. *Lowry v. Jackson,* 27 S. C., 318; 3 S. E., 473. *Wright v. Willoughby,* 79 S. C., 438; 60 S. E., 971. And if the complaint stated no cause of action by either Shelor or Edwards against the defendant, Milford, there was no misjoinder of causes of action which would render the complaint demurrable on that ground. The demurrer interposed to the amended complaint was to the complaint as a whole, and, since it stated a cause of action on behalf of one of the plaintiffs against the defendant, it cannot be held that there was a technical error of law in overruling the demurrer. *Lowry v. Jackson, supra.*

There can be no doubt, however, that the trial of the case upon the theory that Shelor and Edwards could be joined with Mauldin as parties plaintiff, entitled to a joint recovery, was erroneous, and that the error involved

was prejudicial. While the allegations of fact as to Shelor's and Edwards' connection with the subject of the action did not state causes of action against the defendant, they were sufficient clearly to indicate the existence of causes of action on the part of Edwards against Shelor and on the part of Shelor against Mauldin. To permit a combination of these grievances upon a trial by jury for the jurpose of a joint recovery against Milford was inevitably to confuse the issues properly joined upon the one valid cause of action stated— that of Mauldin v. Milford. The nature of the prejudice resulting was analogous to, if not identical with, that brought by an improper joinder of causes of action. See *Hellams v. Switzer,* 24 S. C., 39. Thus the verdict for substantial damages recovered in the case at bar would seem to be referable to evidence adduced tending to sustain Shelor's cause of action against Mauldin, rather than to that tending to establish Mauldin's cause of action against the defendant, Milford. We are, therefore, of the opinion that the order of the Circuit Judge authorizing the joinder of Shelor and Edwards as parties plaintiff was erroneous, and the exception directed to imputation of error in that regard is sustained.

The defense upon which defendant mainly relied, however, was that the mortgagee, Tate, had authorized the mortgagor, Jones, from whom the defendant bought, to sell the property, and had thereby released the lien of the mortgage, and that, having acquired the property free from the lien of the mortgage, he transferred a good title, and could not be held liable by his purchaser or any subsequent transferee for a breach of warranty title. Appellant's position here is that the evidence established that defense as a matter of fact to the exclusion of any other reasonable inference, and that his motion for a directed verdict should have been granted upon that ground. The general proposition, to which appellant's counsel cites authority, that, when a mortgagee expressly or impliedly consents to a

sale of the mortgaged property, he waives his lien and the buyer takes the title free from the lien of the mortgage is well settled. 11 C. J., 624. *Martin v. Jenkins,* 51 S. C., 42; 27 S. E., 947. *Flenniken v. Scruggs,* 15 S. C., 88. If such buyer resells and is sued for breach of warranty of title, proof of the fact that the mortgage was released and that a title free from the lien thereof was acquired and transferred by him would constitute a valid and complete defense, subject to the following limitations: If such seller is notified by his immediate purchaser of a suit against the latter by one claiming the property under the mortgage against which the seller warranted, and is requested and given reasonable opportunity to defend such suit, whether he defends or refuses to defend, the judgment therein will be conclusive against such seller in a subsequent action by the buyer who has been judicially evicted. *Davis v. Wilbourne,* 1 Hill, 27; 26 Am. Dec., 154. *Allen v. Roundtree,* 1 Speers, 80. *Jordan v. Van Duzee,* 139 Minn., 103; 165 N. W., 877; L. R. A. 1918B, 1136. And whether such seller has received formal notice of a suit against his immediate purchaser or a subpurchaser, and has been called upon to defend or not, when advised of the pendency of a suit seeking to assert superior title to the property under a mortgage against which he warranted, such seller is bound in common honesty and fair dealing, if afforded reasonable opportunity therefor, to inform the defendant in such suit of the facts as to the release which render the adverse claim invalid. Certainly, he may not in such circumstances, in equity and good conscience, actively assist by word or deed in the assertion by the adverse claimant of a title under a mortgage against which he as seller warranted, and afterwards successfully defend an action against himself for breach of warranty of title upon the ground that the adverse mortgage claim was invalid. Since the degree of credence to be attached to the testimony tending to establish that the defendant acquired and transferred a title free from the lien of the mortgage

was for the jury, and there was some evidence tending to establish that the defendant was estopped to rely on such defense, the motion for directed verdict upon the ground that the evidence was open to no other reasonable inference than that the defendant had acquired and transferred a title free from the lien of the mortgage was properly overruled.

Nor was the defendant entitled to a nonsuit or a directed verdict upon the ground that the plaintiff, Mauldin, had not actually paid to his immediate buyer and warrantee, Shelor, any sum of money on account of his liability as warrantor. It has been held in other jurisdictions that an intermediate purchaser is not entitled to maintain suit and to recover damages against his seller until he has refunded to his buyer the amount received by him for the chattel. *Myers v. Bowen,* 3 Colo. App., 537; 34 Pac., 585. *Burt v. Dewey,* 40 N. Y., 283; 100 Am. Dec., 482; and see *Close v. Crossland,* 47 Minn., 500; 50 N. W., 694. That rule, however, is announced in *Burt v. Dewey, supra,* is apparently predicated upon the assumption that the possessor of a chattel deprived of possession under a paramount title, as in cases of covenants of warranty running with land, would have a right of action against and to satisfaction from any prior seller or covenantor, and hence that an "intermediate vendee or covenantee could not be permitted to maintain an action against his immediate warrantor or covenantor, in the absence of fraud, without proof of damage by loss of property or compulsory payment of money." But, since the warranty of title to personalty does not run with the property, and the buyer's right of action is confined to action against his immediate seller, upon proof of the breach of warranty it would seem clear that his right to recover substantial damages should be referred to and governed by the general rule of damages, applicable to a recovery for any breach of contract. Under that rule, in an action by an intermediate buyer against his warrantor, we think that proof that the plaintiff has assumed the

payment for the sum for which he is legally liable in damages to his subpurchaser for a breach of his warranty of title is admissible as tending to establish the *quantum* of his loss, flowing from his own seller's breach of warranty as a consequence fairly within the contemplation of the parties to that contract, and will support a recovery by the plaintiff of substantial damages to the extent of the liability by him thus assumed, if such amount is not in excess of the purchase price paid to his seller and warrantor, with interest thereon, etc. *Ware v. Weathnall, supra.* In the English case of *Randall v. Raper,* E. B. & E., 84; 27 L. J. Q. B., 266, cited and reviewed by Mr. Benjamin in his work on Sales (2d Am. Ed., § 903), where subvendees sowed seed which were sold under a warranty of quality, and made claim on their vendees for damages, which the vendors agreed to satisfy, in action by these vendors against their warrantors the plaintiffs were allowed to recover for the amount they were deemed liable to pay, but had not actually paid, their subvendees. See *Wolcott v. Mount,* 36 N. J., Law, 262; 13 Am. Rep. 438, and 17 C. J., 803, § 129. While it is doubtful if the evidence afforded a sufficient basis for the application of the correct measure of damages as between Mauldin and the defendant, Milford, in that the amount of the purchase price paid to Milford by Mauldin does not appear, there was evidence tending to establish a breach of the defendant's warranty of title, and the consequent right to recover at least nominal damages.

Appellant's further contention that the defendant was absolved from liability to either of the three plaintiffs, by reason of the fact that he bought and sold the automobile prior to the maturity of the mortgage debt, and before condition broken, is likewise untenable. That defense, as we apprehend, was interposed in the view that the plaintiffs were seeking to hold the defendant in tort for a conversion of the property. However pertinent and valid such a defense might be in an action by the mortgagee, or one claiming

under him, to charge Milford with liability for a conversion, it is obviously unavailable in an action predicated upon a breach of warranty of title. By his sale of the car Milford warranted that there was no outstanding incumbrance upon the property. If there was a breach of that warranty, it is manifestly immaterial whether at the time the warrantor sold the property any condition of the outstanding mortgage had been broken or not.

The judgment of the Circuit Court is reversed, and a new trial ordered.

Reversed.

MESSRS. JUSTICES FRASER and COTHRAN concur.

MR. JUSTICE WATTS dissents.

MR. CHIEF JUSTICE GARY did not participate.